## GLASSELL–TAYLOR CO. et al. v. MAGNOLIA PETROLEUM CO.

## MAGNOLIA PETROLEUM CO. v. GLASSELL–TAYLOR CO. et al.

### No. 11318.

Circuit Court of Appeals, Fifth Circuit.

Jan. 23, 1946.

Rehearing Denied Feb. 15, 1946.

528

Charles D. Egan, L. Percy Garrot, Harry V. Booth, Leonard L. Lockard, and Whitfield Jack, all of Shreveport, La., for Glassell-Taylor Co. and others.

R. A. Fraser, of Shreveport, La., for Magnolia Petroleum Co.

Before McCORD, Circuit Judge, and BORAH, District Judge.

BORAH, District Judge.

The United States, for the use and benefit of the Magnolia Petroleum Company, sued Core & Planche, subcontractor, Robinson & Young, and Glassell-Taylor, prime contractors, and St. Paul Mercury Indemnity Company, insurance carrier for the prime contractors, on a statutory payment bond, to recover for gasoline and oils alleged to have been furnished and delivered to the subcontractor "in the prosecution of the work" under a contract with the United States Government in connection with the building of an airdrome near DeRidder, in Louisiana.

The suit finds life and is authorized by the Act of August 24, 1935, 49 Stat. 793, Title 40 U.S.C.A. §§ 270a and 270b, known as the Miller Act.

In July, 1942, the two contracting firms, Robinson & Young and Glassell-Taylor Company, acting as associate contractors, entered into a contract with the United States to "furnish the material and perform the work necessary for the construction and completion of Perimeter and Dispersal Taxiways and Hard Standings, Concrete Aprons and Tie-Down Anchors for Hard Standings at DeRidder Airdrome, DeRidder, Louisiana."

The work undertaken by the subcontractor, Core & Planche, was: "* * * to furnish, haul, spread and set up approximately 45,000 cubic yards of sand clay gravel base course for $1.77 per cubic yard, a total of approximately $79,650.00. Approximately 13,000 cubic yards of aggregate for the asphaltic concrete surface course for $1.45 per cubic yard, approximately $18,850.00, delivered to your plant at Hite, Louisiana."

By way of answer, all the defendants, save Core & Planche, which allowed judgment to go against it by default, entered pleas of general denial, and the insurance carrier further sought by cross-claim a recovery against the prime contractors as partnerships and also against each partner individually for any judgment that might be rendered against it.

The issues were tried by the court without the intervention of a jury, and at the conclusion of the trial, judgment was entered for the use plaintiff, Magnolia Petroleum Company, and against Core & Planche, Robinson & Young, and Glassell-Taylor Company, and St. Paul Mercury Indemnity Company, in solido, for the sum of $4,991.65 with 5% interest per annum from January 5, 1943. An additional judgment was decreed for the use plaintiff, Magnolia Petroleum Company, and against Core & Planche in the further sum of $517.50 with 5% interest per annum thereon from February 5, 1943. The judgment further provided that the use plaintiff's right to sue Core & Planche for any additional indebtedness not covered by the judgment entered was reserved by it. Judgment was further decreed in favor of St. Paul Mercury Indemnity Company and against Robinson & Young, Glassell-Taylor Company, and each member of the two firms individually, in solido, for the sum of $4,991.65, with interest at the rate of 5% per annum from February 5, 1943; the judgment providing that on and after St. Paul Mercury Indemnity Company paid over to the use plaintiff, Magnolia Petroleum Company, such recited judgment, interest and costs, that thereupon the St. Paul Mercury Indemnity Company was to be legally subrogated to all the rights of use plaintiff against the two partnerships and each member of the partnerships individually, to the extent of the judgment rendered against it.

The prime contractors and surety have appealed from this judgment contending that the sale and delivery to the subcontractor of the materials that the use plaintiff is suing for were not proved; that even if said sale and delivery had been proved, much of the said material was not used in the prosecution of the work in question; that a considerable portion of same never reached the job site; that the use plaintiff failed to prove that part of the materials which was used in the prosecution of the work or that reached the job site; and that therefore the use plaintiff is not entitled to judgment against them for any amount whatsoever. The use plaintiff on cross-appeal contends that the judgment granted by the district cour'

should have been for the full amount of the account, $5,509.15, and that the district court erred in rejecting a part of plaintiff's demand amounting to $517.50.

The evidence shows that Core & Planche, the subcontractor, opened pits and moved sand and gravel to the airdrome, which was under construction near DeRidder, Louisiana. They used in the movement of this sand and gravel about thirty trucks, ten of which they owned and the other twenty were rented. These trucks would report in the morning at the filling station and were allowed to take gasoline and oil at wholesale prices. The drivers of the trucks would sign a credit slip. The trucks were then driven to the airdrome site to ascertain if any material was needed. If there was hauling to be done the trucks would then go to one of the pits and haul the type of material the foreman or engineer was ready to use. If there was no work the truck driver went wherever he pleased and burned the gasoline and oil as he saw fit, either to work at another job or to travel at his pleasure. In the course of their operations it was sometimes necessary for the trucks to consume extra mileage in traveling to the filling station at DeRidder for replenishment of fuel and on one occasion oil and gasoline were taken from this DeRidder filling station to transport the entire fleet of subcontractor's equipment and trucks a distance of one hundred miles. This was done at the instance and for the benefit of the prime contractors in connection with their contract at Alexandria, Louisiana.

The entire amount of gasoline and oils used by the subcontractor was purchased from the use plaintiff, which provided tanks at points designated by the subcontractor. Sand and gravel were furnished under the direction of the supervising engineers, who called for the kind they desired. At a later time washed gravel was shipped in to go into the building of the airdrome. The three pits from which the sand and gravel were taken were known as the Gimmich, the Wellborn and Cooley pits and they were located around and near DeRidder. The office, repair shops and truck garage were located by the subcontractor in DeRidder. The use plaintiff furnished a filling station at DeRidder and at the Cooley pit.

The invoices from the use plaintiff were made in triplicate and show the time, the place and the amount of each delivery to the subcontractor and the name of the employee receiving the goods on behalf of the subcontractor. A copy of each invoice was retained in the local office of use plaintiff, a copy was mailed to its district office and a copy was furnished to the subcontractor.

The invoices numbers 1 to 127, inclusive, showing accurately the date, amount of purchase, place, and who signed in receipt for the subcontractor, were properly received in evidence under the Act of June 20, 1936, 49 Stat. 1561, 28 U.S.C.A. § 695, and when considered in the light of the testimony proved conclusively that the use plaintiff sold and delivered to the subcontractor the materials in the amount claimed. No materials of like nature were furnished by any other materialman.

The further contentions of appellants are likewise without merit. There is no provision in the statute requiring that materialmen must deliver the materials at the job site or that the materials be "used" in the prosecution of the work. The statute only requires that the materials be "furnished" in the prosecution of the work.

The construction work which is the subject matter of this controversy was completed, and required the use of trucks, draglines and other heavy equipment. From this it follows that gasoline, diesel oil and lubricating oils were indispensable to the prosecution of the work. These materials were in good faith furnished to the subcontractor at the points which it selected and designated; namely, (1) at DeRidder, Louisiana, on the route of the haul from the Gimmich pit; (2) at the Cooley pit; and (3) at Runways on the airdrome. And deliveries were made under circumstances which fully justified the use plaintiff in believing not only that they would be, but that they were in fact, used by the subcontractor in the fulfillment of his contractual obligation. Whether or not the materials were wholly consumed "in the prosecution of" the work provided for in the contract and bond is not controlling. What is important is the fact that these materials were "supplied" to the subcontractor in the prosecution of the work provided for.

The Miller Act, like the Heard Act in its original form and as amended in 1905, 40 U.S.C.A. § 270a note, is highly remedial in nature. It is entitled to a

liberal construction and application in order properly to effectuate the Congressional intent to protect those who furnish labor or materials for public works. The statute and the bond given under it speak of paying "persons supplying labor and materials in the prosecution of the work." The Supreme Court has repeatedly held that these quoted words in particular should be liberally construed. Thus in United States to Use of Hill v. American Surety Co., 200 U.S. 197, 26 S.Ct. 168, 50 L.Ed. 437, materials furnished to a subcontractor were held covered by the contractor's bond. In Title Guaranty & Trust Co. v. Crane Co.; 219 U.S. 24, 34, 31 S.Ct. 140, 55 L.Ed. 72, the claims for which recovery was allowed under the bond included not only cartage and towage of material, but also claims for drawings, patterns, used by the contractor in making molds for the castings entering into the construction of the ship. In United States Fidelity & Guaranty Co. v. Bartlett, 231 U. S. 237, 34 S.Ct. 88, 58 L.Ed. 200, where the work contracted for was the building of a break-water, recovery was allowed for all the labor at the quarry opened 50 miles away. This included the labor not only of men who stripped the earth to get the stone and who removed the debris, but carpenters and blacksmiths who repaired the cars in which the stone was carried to the quarry dock for shipment, and who repaired the tracks upon which the cars moved. And the claims allowed included also the claims of stablemen who fed and drove the horses which moved the cars on those tracks. In Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206, the court allowed recovery not only for the rental of cars, trucks and other equipment used by the contractor in facilitating his work but also the expense of loading this equipment and the freight paid thereon to transport it to the place where it was used. In Brogan v. National Surety Co., 246 U.S. 257, 38 S.Ct. 250, 62 L.Ed. 703, L.R.A.1918D, 776, it was held that laborers and materials not incorporated into the work were covered and where, because of special circumstances, the contractor had to board the laborers, that provisions furnished to him for that purpose were covered. In Standard Accident Insurance Co. v. United States for Use and Benefit of Powell et al., 302 U.S. 442, 58 S.Ct. 314, 315, 82 L.Ed. 350, the

court held that a common carrier by railroad could recover under the statute for freight charges for transporting material on the ground that the railroad was a corporation which had furnished labor in the construction of a public building. It was observed in that case that the Supreme Court was committed to the doctrine that the statute should be "liberally construed in aid of the evident public object—security to those who contribute labor or material for public works."

In the light of these decisions it follows that the strict letter of the Act must yield to its evident spirit and purpose when this is necessary to give effect to the intent of Congress. Rector, etc., of Holy Trinity Church v. United States, 143 U.S. 457, 459, 12 S.Ct. 511, 36 L.Ed. 226; Ozawa v. United States, 260 U.S. 178, 194, 43 S.Ct. 65, 67 L.Ed. 199. And unjust and absurd consequences are, if possible, to be avoided. Lau Ow Bew v. United States, 144 U.S. 47, 59, 12 S.Ct. 517, 36 L.Ed. 340; Hawaii v. Mankichi, 190 U.S. 197, 213, 23 S.Ct. 787, 47 L.Ed. 1016.

Under the proviso of Section 2(a) of the Miller Act the right to bring suit on a payment bond is afforded to those materialmen, laborers and subcontractors who, lacking express or implied contractual relationship with the prime contractor, have direct contractual relationship with a subcontractor and who give the statutory notice of their claims to the prime contractor. Under the facts of this case it would be manifestly unjust to hold that the use plaintiff, which had in good faith supplied the subcontractor with materials indispensable to the prosecution of the work, and which had complied with the jurisdictional prerequisites essential to the bringing of suit could be defeated in its action on the payment bond because some of the material beyond its disposition and control was in fact diverted to private use. Under the facts in this case it did not lie within the power of the use plaintiff to protect itself against the happening of such an event. On the contrary, as was observed in MacEvoy v. United States, 322 U.S. 102, 110, 64 S.Ct. 890, 88 L.Ed. 1163, the prime contractors could easily have secured themselves against loss by requiring the subcontractor to give security by bond or otherwise for the payment of those who contracted directly with the subcontractor. After all, the prime contractor

selects his own subcontractors and it seems not unjustly harsh that he should be holden for their laxities.

For the reasons stated we think that the court below was in error in rejecting the part of use plaintiff's demand that amounted to $517.50 and that judgment should also have been granted use plaintiff against the prime contractors and their surety for the full amount of its account, $5,509.15. Accordingly the judgment in favor of St. Paul Mercury Indemnity Company should be correspondingly increased. As modified in these particulars the judgment is affirmed.