ALBERT I. COHEN, trustee in bankruptcy, & another *vs.* HENRY N. WORTHINGTON COMPANY & others.

Suffolk.    May 7, 1956. — July 27, 1956.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Public Works.   Landlord and Tenant,* Lease of machinery.

Following a lease of sundry pieces of heavy equipment as a group for a single rental to a contractor for general use in his work before he made a contract with the Commonwealth for highway construction, and subsequent use of the equipment on that construction project from time to time, a statement of claim by the lessor for unpaid rent for all the pieces during times they were used on that project was, as to the entire claim, seasonably filed by him under G. L. (Ter. Ed.) c. 30, § 39, as appearing in St. 1935, c. 472, § 1, where it was filed within sixty days after the last use of one of the pieces on the project although more than sixty days after the last use of the other pieces thereon. [514–515]

Security furnished under G. L. (Ter. Ed.) c. 30, § 39, as appearing in St. 1935, c. 472, § 1, in connection with a contract for highway construction with the Commonwealth did not cover a claim by one, who had leased to the contractor equipment used on the project, for the expense of making repairs of the equipment which the contractor had failed to make as required by the lease.  [515]

PETITION, filed in the Superior Court on August 30, 1951.

The suit was heard by *Hurley,* J., on a master's report.

*Stuart DeBard,* for Dougherty.

*Harry B. White,* for Maryland Casualty Company.

*Bernard P. Rome & Julius Thannhauser,* for Henry N. Worthington Company, submitted a brief.

WILLIAMS, J.   This is a petition filed on August 30, 1951, under G. L. (Ter. Ed.) c. 30, § 39, as appearing in St. 1935, c. 472, § 1, by Nicholas Salvucci, a subcontractor, to establish a claim for labor and materials furnished to the general contractor, Henry N. Worthington Company, in the construction of a portion of State highway, Route 128, in Lexington and Waltham, and to recover the amount of his claim from the security comprised of the percentage of the contract price which has been withheld by the Commonwealth and the obligation of Maryland Casualty Company, the surety on the contractor's bond.   The only issues now before us relate to the claim of A. L. Dougherty, doing business as A. L. Dougherty Company, who has intervened and seeks to establish a claim for the rental of equipment to the general contractor and damage to the equipment resulting from its use.   Maryland Casualty Company seeks by a counterclaim inserted in its answer indemnification from the general contractor in the amount which it shall be obliged to pay under its bond.

Findings of the master to whom the case was referred are substantially as follows.   The contract for the construction of the aforesaid portion of Route 128 was awarded by the Commonwealth to the Worthington company on April 14, 1950, at a price of $1,176,434.30.   The surety company was surety on a statutory bond for that amount furnished under § 39.   Work was begun on the project on May 1, 1950, and the Commonwealth accepted it as completed on September 11, 1952.   The Commonwealth now retains as a reserve $62,774.38, subject to claims and liens, including those of the petitioner and intervener, amounting to $61,774.38.   On November 26, 1949, the Worthington company executed a "machine lease agreement" with Dougherty, whose place of business was Indianapolis, for the use of "heavy construction machinery in the vicinity of Boston, Mass."   The agreement called for the lease of four caterpillar tractors, with serial numbers 2U7845, 2U7302, 2U7318, 2U7714, two caterpillar 80 scrapers with serial numbers 2D1529, 2D1635, and two bulldozer blades, which were attached to two of the

tractors, for ninety days from December 18, 1949. The total rental was $5,376 per month payable in advance. The lease provided for its extension for an additional three months on two weeks' notice given by the lessee and contained an acknowledgment by the lessee that the machines were received in good condition. It provided that the lessee should "take reasonable and proper care of same" and "assume the costs and expenses and make all necessary repairs and replacements," and that on the expiration of the lease it would "deliver said machines to the lessor . . . in good order and condition." In a typed supplement to the lease it was stated that "It is agreed that machinery herein described is in new like condition, that it will be regularly serviced and it will be maintained in like condition at all times with the exception of wear resulting from normal use in the hands of competent operators." In December, 1949, the Worthington company was engaged on several jobs in different stages of completion, and the leased equipment "was used on them, off and on, until and even after" the company began work on the Route 128 job. Some of the equipment was used on this job from its beginning and continued to be used until June 18, 1950, on which date the last payment of rental was made. Thereafter the several items of equipment were used on the job at the following times:

| "Item of Equipment | Dates Employed on Job |
|---|---|
| 1. Tractor-Bull Dozer #2U7302 | June 18 to Aug. 31, 1950 |
| 2. " " " #2U7318 | Oct. 16 to Oct. 30, 1950<br>Dec. 1, 1950 to Feb. 2, 1951 |
| 3. Tractor #2U7714 | Aug. 18 to Nov. 11, 1950 |
| 4. Tractor #2U7845 | None |
| 5. Scraper #2D1529 | Aug. 18 to Nov. 11, 1950 |
| 6. Scraper #2D1635 | Aug. 18 to Nov. 11, 1950" |

No rental was paid after June 18 and Dougherty repossessed his equipment on February 2, 1951.

The master found that the Worthington company owes rent to Dougherty from June 18, 1950, to February 1, 1951, in the amount of $40,320 with interest at six per cent; that

the equipment was not serviced or maintained by the Worthington company in the condition for which the lease provided; that when repossessed it was in a state of disrepair; that the cost of making the necessary repairs and replacements, including the expense of painting and hauling, was $14,718.60; and that the Worthington company is liable to pay this amount to Dougherty. He further found that there was no credible evidence from which it could be determined what part of the repair cost was attributable to misuse and what part to wear resulting "from normal use in the hands of competent operators."

Dougherty filed his statement of claim on February 2, 1951, in which it was stated in an account annexed that the claim was $37,632 for rental of the equipment from June 18, 1950, to January 17, 1951, at the rate of $5,376 per month. The master found that of the rent of $40,320 with interest which was owed by the Worthington company to Dougherty only $11,742 with interest is payable from the security, that being the amount of rental for the equipment during the time it was actually used on the Route 128 job, including "stand by" time.

The master found that $2,621.28 was due Salvucci, and the propriety of this finding is not disputed. Salvucci at some time assigned his claim to Grove Construction Co., Inc., which later was adjudged bankrupt and its trustee in bankruptcy was substituted as petitioner in these proceedings on May 10, 1954. The Worthington company was adjudicated bankrupt in 1952, its trustee in bankruptcy being Samuel Rosen.

An interlocutory decree was entered confirming the master's report and overruling the exceptions thereto filed by Dougherty, from which decree only Dougherty appealed. A final decree was entered providing that the security taken on behalf of the Commonwealth is represented by $62,744.38 retained on the Worthington contract and by the bond of the surety company; that out of this security Dougherty is entitled to be paid $11,742 with interest from August 30, 1951, in the sum of $2,661.51, making a total of

$14,403.51; that the Commonwealth pay to Dougherty out of the reserve held by it the sum of $14,403.51; that upon the payment of this sum the Commonwealth and the surety company are released as to all claims of Dougherty; that the Worthington company is indebted to Dougherty in the sum of $55,038.60 with interest from August 30, 1951, in the sum of $12,475.16, making a total of $67,513.76; and that the Worthington company pay this amount to Dougherty less the sum of $14,403.51 which is to be paid by the Commonwealth, leaving the amount to be paid by the Worthington company $53,110.25. From this decree Dougherty and the surety company appealed. This final decree was entered on June 9, 1955. Later a decree, also termed a final decree, was entered on February 16, 1956. This later decree stated that no decree had been entered on the claim of Grove Construction Co., Inc., assignee of the Salvucci claim, as prosecuted by Albert J. Cohen its trustee in bankruptcy, because of the pendency of tax liens by the United States against Salvucci. It established the counterclaim of the surety company against the Worthington company in the net amount of $37,561.50 and adjudged that $45,749.05 was held as security by the Commonwealth over and above the amount of $14,403.51 ordered in the previous decree to be paid to Dougherty and $2,621.82 "representing the claim of Albert J. Cohen, as trustee in bankruptcy aforesaid." It ordered the Commonwealth to pay to the surety company out of the reserve held by it the sum of $37,561.50 within thirty days after the issuance by the clerk of the Suffolk Superior Court of the certificate required by G. L. (Ter. Ed.) c. 258, § 3. The only appeal from the decree of February 16, 1956, was by Dougherty and has been waived.

As the Worthington company did not appeal from the decree of June 9, 1955, establishing the amounts payable by it to Dougherty for the rent of the equipment and the expense of repairing the same, the only issues before us are those raised by the contentions of the surety company and Dougherty relating to the legal sufficiency of Dougherty's

statement of claim and his right to recover the expense of repairs from the security. The surety company contends that Dougherty can recover from the security only the rental due for those items of equipment which were last used on the job within sixty days immediately previous to February 2, 1951, when his statement of claim was filed. This contention, if sustained, would limit recovery from the security to the rent payable for tractor 2U7318 which was the only machine actually employed on the job during that period. The machines were leased as a group for the general work of the lessee although no reference was made in the lease to the Route 128 construction contract which at the time had not been awarded. The rent was computed for the group as a whole. One or more of the machines were later used, as occasion required, on the Route 128 project and one remained in such use until all of the machines were repossessed on February 2, 1951. There is no question as to the amount of rent owed by the lessee to the lessor or that a proportionate part of that rent was payable for the use of the machines on the public work of the Commonwealth. The dates between which the different machines were so used have been reported by the master. The lessor, who furnished the machines, is entitled under G. L. (Ter. Ed.) c. 30, § 39, as amended, to the benefit of the security for which provision is there made if his statement of claim was filed within sixty days after the time when he ceased to furnish this equipment. This occurred when repossession was taken. One of the machines was then in actual use on the Route 128 project and the others, so far as appears, were available for such use. We think that filing his claim within sixty days after the last of the machines was used on the project was a compliance with the statute and entitles Dougherty to the benefit of the security for that part of the rent attributable to the use of any of the machines on the project. The contention of the surety company requires too narrow a construction of the statute which is broadly designed to afford security to a furnisher of equipment for use on public work. See *Lock Joint Pipe*

*Co.* v. *Commonwealth*, 331 Mass. 346, 353. We think that in the circumstances the statement of claim filed within sixty days after the last machine was used entitled Dougherty to the security for the rent due for the use of all the machines.

Dougherty's contention that he has a lien on the security for the expense of repairing his equipment is substantially settled by the decision of this court in *Broga* v. *Leo*, 295 Mass. 520. We there held that the statutory lien "is not applicable to labor performed or furnished in creating or rehabilitating for the contractor a steam shovel, an engine and boiler, picks, shovels, crowbars and the like which are used in doing the work, survive its performance and remain the property of the contractor." Although in that case the claimant was the person who had repaired the equipment the principle involved is applicable here. The expense of labor and material in repairing damage to equipment which has been furnished by a lessor to be used in the work of construction is no more lienable than would be the expense of such repairs incurred by a contractor. The cost of repairs for damage to leased property resulting from the lessee's violation of the terms of his lease is not a part of the rent payable, although the probability or possibility of such damage may have entered into the original fixing of its amount.

Exceptions of Dougherty to the master's report so far as they involve questions of law were, in our opinion, properly overruled and require no discussion. There was no error in the interlocutory decree or in the decree of June 9, 1955.

*Interlocutory decree affirmed.*
*Decree of June 9, 1955, affirmed.*
*Decree of February 16, 1956, affirmed.*