INTERNATIONAL HARVESTER COMPANY *v.*
L. G. DEFELICE AND SON, INC., ET AL.

KING, C. J., MURPHY, SHEA, ALCORN and COMLEY, JS.

Argued November 6, 1963—decided January 21, 1964

*James R. Greenfield,* with whom, on the brief, were *Harry P. Lander* and *John H. Krick,* for the appellant (plaintiff).

*Albert W. Cretella, Jr.,* with whom was *Albert W. Cretella,* for the appellees (defendants).

ALCORN, J. The plaintiff brought this action under § 49-42 of the General Statutes, seeking reimbursement for labor and materials claimed to have been furnished to Catello DiLauro, a subcontractor of L. G. DeFelice and Son, Inc., which had contracted with the state to construct a section of highway. General Statutes § 49-41 requires such a contractor to furnish to the state "a bond in the amount of the contract . . . for the protection of persons

supplying labor or materials in the prosecution of the work provided for in . . . [the] contract." L. G. DeFelice and Son, Inc., hereafter referred to as DeFelice, furnished such a bond. The five surety companies which signed the bond together with DeFelice, are defendants in the action. The plaintiff sought reimbursement from all defendants to the extent of $23,475.85. The court adjudged that the plaintiff recover of the defendants $1802.88, and the plaintiff has appealed.

The issues before us require an interpretation of § 49-42, the pertinent portions of which are quoted in the footnote.[1] Our concern is with the portion of the statute which states that "[e]very person who has furnished labor or material in the prosecution of the work provided for" in the con-

---

[1] "Sec. 49-42 [later amended by Public Acts 1961, No. 228]. SUIT ON BOND; WHEN AND HOW BROUGHT. (a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract in respect of which a payment bond is furnished under the provisions of section 49-41 and who has not been paid in full therefor before the expiration of a period of sixty days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute such action to final execution and judgment for the sum or sums justly due him; provided any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing such payment bond shall have a right of action upon such payment bond upon giving written notice to such contractor within sixty days from the date on which such person performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. . . . (c) The word 'material' as used in sections 49-41 to 49-43, inclusive, shall be construed to include the rental of equipment used in the prosecution of work provided for in such contract."

tract in respect of which the payment bond under §49-41 is furnished may recover in an action on the bond. The court has found that all of the procedural requirements for the maintenance of an action under §49-42 have been met. We have not, heretofore, been called on to construe the statute.

The corrections which are sought in the court's finding would not benefit the plaintiff in the view which we take of the case. The essential facts may be briefly summarized. On or about September 2, 1959, DeFelice contracted with the state to relocate and construct a section of highway. In connection with that contract and pursuant to §49-41, DeFelice as principal entered into a bond with the other defendants as sureties and filed it with the state. In performing its contract, DeFelice engaged DiLauro as a subcontractor to haul fill for the road construction and has fully paid him for the work. DiLauro started work with six used trucks, the age and condition of which is not disclosed, and he purchased five more secondhand trucks during the course of the job. He used his trucks exclusively for hauling fill under his subcontract, save for about a dozen days when one truck may have been diverted to other work. DiLauro's hauling job covered the period from December, 1959, to August, 1960, and from March to August, 1960, he operated his trucks on a double shift so that some trucks were used twenty hours a day in order to meet a deadline. Throughout the period of the subcontract the trucks were subject to numerous breakdowns. The trucks were repaired either by the plaintiff or by DiLauro's employees with parts furnished by the plaintiff. Pink invoices were rendered DiLauro when both materials and labor for the repairs were furnished by the plaintiff. Yellow invoices were rendered

DiLauro for parts purchased from the plaintiff but used in repairs made by DiLauro's employees. All invoices up to June, 1960, were paid by DiLauro. Invoices for June, July and August, 1960, amounting to $23,475.85, have not been paid, and DiLauro has been adjudicated a bankrupt.

The pink invoices embrace a multitude and variety of items. They include charges for such things as a new engine, a new transmission, radiator and wiring repairs, relining brakes, replacing a cylinder head, exchanging one transmission for another, new differentials, greasing, tuning motors, removing parts from one truck and installing them in another, installing an air bath assembly, replacing springs, remedying transmission noise, grinding valves, and overhauling generators and transmissions.

The yellow invoices include charges for such things as batteries, springs, axle shafts, a wheel, a mirror and a multitude of small items such as nuts, bolts, switches, gauges, pumps and spark plugs.

The court decided, in substance, that the charges for labor and materials appearing on the pink invoices represented major repairs in the nature of general overhauling, reconditioning, and installation of new motors and parts, and that the work amounted to permanent improvement in the equipment fitting it for use in other work rather than repairs due to ordinary wear and tear. The court concluded, for the reasons stated, that these charges failed to come within the purview of § 49-42, and it denied the plaintiff a recovery based on them.

The court decided, however, that the charges for parts listed on the yellow invoices were a proper basis for a recovery, because the parts were used in making incidental repairs necessary to keep the equipment in operating condition.

The two groups of invoices do not, however, lend themselves to this differentiation. The numerous labor charges made by the plaintiff on the pink invoices for relining brakes, greasing, tuning engines, grinding valves and overhauling generators and transmissions, to name but a few, could readily have been due to ordinary wear and tear and would not necessarily have amounted to a permanent improvement. On the other hand, new axles, springs or batteries did not necessarily become any the less new parts or improvements to equipment because they were installed by DiLauro's employees rather than by the plaintiff's.

The answer to the problem as to which, among the many, items are properly recoverable under § 49-42 calls for an interpretation of the statute which allows materialmen a just recovery for labor and material furnished in the prosecution of the work encompassed by the contract in connection with which the bond was given, but at the same time, denies to the contractor capital improvements to his equipment at the expense of the principal and surety. This objective was recognized by the court in its reference to a distinction between "permanent improvement of the equipment" and "[i]ncidental repairs reasonably necessary to keep the equipment in operating condition." The crucial question, however, is how the one is to be differentiated from the other in the determination of what is labor or material furnished in the prosecution of the work.

Courts in other jurisdictions have not attempted an all-inclusive definition of material furnished in the prosecution of the work, "for the facts and circumstances of each case are the sole determinants of the definition." *United States* v. *Fire Assn. of Philadelphia,* 260 F.2d 541, 544 (2d Cir.). The

interpretations of similar statutes in other states are of little help in an interpretation of our own statute because of the variations of wording involved. See, for example, Minn. Stat. § 574.26 (1961); N. H. Rev. Stat. Ann. § 447:16 (1955); N. Y. State Fin. Law § 137; R. I. Gen. Laws Ann. §§ 37-12-1, 37-12-2 (1956); *Cohen v. Henry N. Worthington Co.*, 334 Mass. 509, 515, 136 N.E.2d 237; *Hub Oil Co., Inc. v. Jodomar, Inc.*, 176 Misc. 320, 322, 27 N.Y.S.2d 370.[2]

An apparent kinship between our own and the federal statutes of similar purpose, however, leads us to decisions of the federal courts for precedent. In *National Fireproofing Co. v. Huntington*, 81 Conn. 632, 635, 71 A. 911, we held that a mechanic's lien does not attach to and cannot be enforced against the public property of the state, or of a county or municipality. As a result of that decision, which was approved in *Fenton v. Fenton Building Co.*, 90 Conn. 7, 13, 96 A. 145, the General Assembly enacted chapter 118 of the Public Acts of 1917. *Norwalk v. Daniele*, 143 Conn. 85, 86, 119 A.2d 732. The 1917 statute required a bond conditioned both for the faithful performance of the principal contract and for the payment for all materials and labor used or employed in the execution of the contract. In this respect, it corresponded to the federal statute commonly referred to as the Heard Act of 1894; 28 Stat. 278; although the Heard Act differed in other respects. The Connecticut statute of 1917 continued unchanged in the respect indicated, however, until 1941. See Cum. Sup. 1935, § 1594c. In the meantime, on August 24, 1935, the Heard Act

---

[2] See also the 1962 edition of "Credit Manual of Commercial Laws," published by the National Association of Credit Management, pp. 635-735.

was supplanted by the act of Congress popularly known as the Miller Act. 49 Stat. 793, 40 U.S.C. §§ 270a–e. The Miller Act reinstated the basic provisions of the Heard Act and was designed primarily to eliminate certain procedural limitations. *Clifford F. MacEvoy Co.* v. *United States,* 322 U.S. 102, 105, 64 S. Ct. 890, 88 L. Ed. 1163. It required a bond to a stated percentage of the contract price for the payment of materials and labor furnished in the execution of the contract. The proceedings surrounding the adoption of the amendment to the Connecticut statute, six years after the Miller Act was adopted, strongly suggest that the Miller Act was the model for our own statutes, §§ 49-41 and 49-42. The amendment was initiated in the 1941 session of the General Assembly by House Bill 1137, the language of which sought only to include rental charges for equipment used in the execution of the bonded contract within the coverage of the bond then required by the existing statute. Following committee hearings on the bill, a substitute bill was reported out. Patterned, in form and language, after the Miller Act, the bill called for the repeal of § 1594c of the 1935 Cumulative Supplement and the adoption of a requirement of a bond amounting to a stated percentage of the contract price for the payment for materials and labor furnished in the prosecution of the contract. Before final enactment, however, the bill was again altered to require a bond in the amount of the contract as well as specifically to include the rental of equipment within the meaning of the term "materials" as used in the statute. This latter provision had been engrafted on the Heard Act by judicial decision in *Illinois Surety Co.* v. *John Davis Co.,* 244 U.S. 376, 383, 37 S. Ct. 614, 61 L. Ed. 1206. The result of the General Assembly's

action was the enactment of § 649f of the 1941 Supplement, the predecessor of our present § 49-41, and the enactment of § 695f of the 1941 Supplement, the predecessor of our present § 49-42. From this legislative history, it is reasonable to conclude that the General Assembly intended our own statutes to operate in general conformity with the Miller Act. *Jennings* v. *Connecticut Light & Power Co.*, 140 Conn. 650, 658, 103 A.2d 535.

We have previously said that statutes such as § 49-41 are to be liberally construed; *Pelton & King, Inc.* v. *Bethlehem*, 109 Conn. 547, 553, 147 A. 144; and that the protection which § 49-41 affords is to be applied without reference to whether, as against a private owner, a mechanic's lien might attach for claims for labor or materials furnished. Id., 556. We have also said that where a statutory bond is given, the provisions of the statute will be read into the bond so that it is immaterial that, as in this case, the bond varies from the wording of the statute. *New Britain Lumber Co.* v. *American Surety Co.*, 113 Conn. 1, 5, 154 A. 147. Beyond this, the interpretation of the statute must be approached on the premise that the purpose of the bond under § 49-41 is to facilitate the expeditious and uninterrupted completion of public works by furnishing a means through which suppliers of labor and material in the prosecution of the work are afforded protection in extending credit to contractors. The intended beneficiaries are the public, the laborers and the materialmen rather than the surety or the principal contractor. Consequently, the fact that DeFelice had fully paid DiLauro for the performance of the subcontract is no defense to the plaintiff's action. *Illinois Surety Co.* v. *John Davis Co.*, supra, 380; *Moyer* v. *United States*, 206 F.2d 57, 60 (4th Cir.).

To meet the objective of the statute, material actually forming a part of the public work, labor performed at the site, and, under the express wording of our statute, the renting of equipment used in the prosecution of the work are clearly covered.[3] It is in the realm of repair items, such as in the present case, that major difficulties appear in the decided cases. The issue revolves about the concept, already alluded to, of a capital improvement as opposed to repairs necessitated by the wear and tear resulting from a particular job. Thus, materials which compensate only for wear and tear and are wholly consumed, or, at the time of their delivery, were reasonably expected, by the supplier and contractor, to be consumed, on the job have been held to be covered. *Continental Casualty Co.* v. *Clarence L. Boyd Co.*, 140 F.2d 115, 116 (10th Cir.); see also *United States* v. *Fire Assn. of Philadelphia*, 260 F.2d 541, 544 (2d Cir.); *Massachusetts Bonding & Ins. Co.* v. *United States*, 88 F.2d 388, 390 (5th Cir.). The Minnesota court has reached, on the language

---

[3] While decisions of the federal courts have held rentals of equipment to be within the coverage of the bond; *Basich Bros. Construction Co.* v. *United States*, 159 F.2d 182, 183 (9th Cir.); *United States* v. *Chester Construction Co.*, 104 F.2d 648, 649 (2d Cir.); rentals which are, in effect, payments on a conditional sale contract are not included. *Massachusetts Bonding & Ins. Co.* v. *United States*, 88 F.2d 388, 390 (5th Cir.); *United States* v. *Kelly*, 192 F. Sup. 274, 277 (D. Alaska). Items such as gas, oil, fuel, feed and food for employees; *Brogan* v. *National Surety Co.*, 246 U.S. 257, 262, 38 S. Ct. 250, 62 L. Ed. 703; *Glassell-Taylor Co.* v. *Magnolia Petroleum Co.*, 153 F.2d 527, 529 (5th Cir.); freight charges; *Standard Accident Ins. Co.* v. *United States*, 302 U.S. 442, 444, 58 S. Ct. 314, 82 L. Ed. 350; and the replacement value of lost equipment, the risk of which had been assumed by the lessee; *United States* v. *National Surety Corporation*, 268 F.2d 610, 611 (5th Cir.), cert. denied, 361 U.S. 914, 80 S. Ct. 259, 4 L. Ed. 2d 184; *United States* v. *Ramstad Construction Co.*, 194 F. Sup. 379, 382 (D. Alaska); have been held to be covered by the bond.

of its own statute, cited above, a result closely approximating that reached under the Miller Act in *United States* v. *Fire Assn. of Philadelphia,* supra, when it said: "If the repair was of the nature when made that it could be said that the replaced part would likely be worn out or consumed on the contract if completed, there should be a recovery on the bond." *Mack-International Motor Truck Corporation* v. *Western Surety Co.,* 194 Minn. 484, 486, 260 N.W. 869. For cases in other states which apply a closely analogous rule, see *A. L. Young Machinery Co.* v. *Cupps,* 213 Cal. 210, 216, 2 P.2d 321; *Yancey Bros. Inc.* v. *American Surety Co.,* 43 Ga. App. 740, 743, 160 S.E. 100; *State ex rel. Modern Motor Co.* v. *H & K Construction Co.,* 75 Idaho 492, 495, 274 P.2d 1002; *West* v. *Detroit Fidelity & Surety Co.,* 118 Neb. 544, 551, 225 N.W. 673; *State* v. *Metropolitan Casualty Ins. Co.,* 145 Ore. 367, 373, 26 P.2d 1094; *Margulies* v. *Ogdie,* 69 S.D. 352, 356, 10 N.W.2d 513; *Hicks* v. *Randich,* 106 W. Va. 109, 117, 144 S.E. 887.

We conclude that it is not possible to state a comprehensive definition of what labor and materials used in making repairs are allowable under the statute. Little difficulty is presented in the class of minor items which are uniformly allowed.[4] It is in the area of major items where the difficulty is encountered. Although the generally accepted legal and tax accounting principles which are applicable to expenses of operation and capital improvements are persuasive, they can have no conclusive force.

---

[4] Some of the factors which have been held to be helpful in deciding whether or not a particular repair is a minor one are: (1) cost of the repair relative to the value of the item repaired; (2) whether the repair is of a recurring nature; (3) whether the value of the equipment has been significantly increased by the repairs.

We are in accord with the reported decisions which hold that the most significant single factor in distinguishing materials contemplated by the statute from capital equipment is the element of substantial consumption on the job. Recognition must be given to the fact that the present statute, contrary to the 1917 statute and the Heard Act, as later amended in 1905 (33 Stat. 811), does not require that the materials be used in the work but, as in the Miller Act, specifies that they be furnished in the prosecution of the work. We accept the proposition enunciated in *United States* v. *Fire Assn. of Philadelphia,* supra, 544, that if, at the time of delivery, the facts unequivocally show that both the supplier and the purchasing contractor reasonably expected that any major item involved would be substantially consumed in the work under the contract, the cost thereof is properly recoverable even though the item was not actually consumed during the progress of the work. Such a construction properly places on the repairer who seeks to recover under the bond the responsibility of showing that, at the time he performed the work or furnished the material, he and his customer reasonably expected that the subject of the transaction would be substantially consumed within the period of the contract. A fair and liberal interpretation of the statute requires that, on such a showing, the repairer should be entitled to recover in the absence of proof by the principal or surety that the repairer was aware of the fact that the contractor, in having the work done, was building up capital equipment at the expense of the surety instead of obtaining repairs necessitated by the job, or that the repairs were due to the prior condition of the equipment rather than to the rigors of the job involved. See *United States* v. *D. C. Loveys Co.,*

174 F. Sup. 44, 49 (D. Mass.), aff'd, 275 F.2d 372 (1st Cir.); *Glassell-Taylor Co.* v. *Magnolia Petroleum Co.,* 153 F.2d 527, 530 (5th Cir.).

This conclusion requires a new trial in order that the items appearing on the various invoices in issue may be reevaluated in the light of this interpretation of § 49-42.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.