[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON ISSUE AS TO WHETHER COLLATERAL ESTOPPEL MAY BE A DEFENSE TO AN ACTION ON CONSTRUCTION BOND CT Page 3512
On June 16, 1992, plaintiff Dan Beard, Inc. (hereinafter "Beard"), filed a one count complaint against defendants Cosmar Construction Company (hereinafter "Cosmar") and MCA Insurance Company (hereinafter "MCA"). In that complaint, Beard alleges that prior to September 20, 1991, Cosmar entered into a contract with Pave-Rite, Inc. d/b/a Mitchell Paving Sealing Co. (hereinafter "Pave-Rite"), for the performance of certain paving work in connection with a contract between Cosmar and the State of Connecticut, for the reconstruction of a street in the towns of Ansonia and Derby. Beard alleges that on June 14, 1991 Cosmar executed a payment bond in the amount of $341,996.30 for the payment of all materials and labor used in the execution of the Cosmar-State contract. Beard also alleges that between September 20, 1991 and September 24, 1991 Pave-Rite purchased $40,399.67 worth of asphalt from Beard and that when the due date for the payment of that amount had passed, Pave-Rite owed an additional finance charge of $605.99.
Beard next alleges that it mailed a notice of claim to both Cosmar and the surety under the payment bond, MCA, notifying MCA that it was making a claim against them under the payment bond for the materials supplied to Pave-Rite. Beard further alleges that the refusal by both Cosmar and MCA to pay Beard for the materials was wrongful and in breach of the terms and obligations of the payment bond. As a result, Beard claims damages pursuant to General Statutes 49-42(a).
On October 27, 1992, Cosmar filed an answer and a revised special defense. In that special defense Cosmar argues that it offered to make payment directly to Beard, but that despite Beard's knowledge of Pave-Rite's poor financial condition, it refused payment by Cosmar. Cosmar further argues that as a result of Beard's refusal, it is estopped from asserting a claim against the defendants under the payment bond.
On November 2, 1992, Beard filed a motion for summary judgment against defendants Cosmar and MCA on the issue of liability only. However, at short calendar on December 21, 1992, Beard chose to pursue its motion for summary judgment against Cosmar only. Beard argues that, since there is no genuine issue of material fact with regard to Cosmar's liability, judgment should enter as a matter of law. Pursuant to Practice Book 380, Beard filed a supporting memorandum of CT Page 3513 law together with supporting affidavits and other documents.
On December 18, 1992, Cosmar filed a memorandum of law in opposition to the motion for summary judgment together with the affidavits of Fernando Constantini (President of Cosmar) and June E. Mitchell (President of Pave-Rite).
"In any action . . . any party may move for a summary judgment. . . ." Practice Book 379. Furthermore, "[a]n interlocutory summary judgment may . . . be granted on the issue of liability [alone]. . . ." Altieri v. Nanavati, 41 Conn. Sup. 317,319, 573 A.2d 359 (1990). "A motion for summary judgment shall be supported by such documents as may be appropriate, including . . . affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like." Practice Book 380. "In opposing summary judgment, [the nonmovant must substantiate] its adverse claim by means of an affidavit and other exhibits demonstrating the existence of a disputed factual issue." Reid and Riege v. Brainerd Cashman Ins. Agency, Inc., 26 Conn. App. 580, 585, 602 A.2d 1051
(1992). Summary judgment shall be granted if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Farmington v. Dowling, 26 Conn. App. 545, 548-49, 602 A.2d 1047 (1992).
In its memorandum of law in support of its motion for summary judgment, Beard argues that its motion should be granted on two grounds. First, it argues that since General Statutes 49-41(a) provides a means by which materialmen are afforded protection, there is no genuine issue of material fact concerning Cosmar's liability under the payment bond. Second, it argues that although Cosmar claims that Beard refused direct payment in full by Cosmar, prior to Cosmar's paying Pave-Rite, this "estoppel" defense has been explicitly rejected by the Connecticut Supreme Court.
In its memorandum in opposition to the motion for summary judgment, Cosmar argues that through its answer and revised special defense and the affidavits of Constantini and Mitchell, it has clearly demonstrated that issues of fact do exist. Cosmar argues that when Pave-Rite was unable to pay its debts as they came due, this was brought to Beard's attention and Cosmar offered to pay Beard directly for the supplies purchased by Pave-Rite. Nevertheless, Cosmar argues, Beard CT Page 3514 refused this offer and instead decided to look directly to Pave-Rite for the money owed. Cosmar further argues that in reliance on Beard's refusal of direct payment by Cosmar, it then paid Pave-Rite $50,564.40 in full satisfaction of its obligations under the contract between it and the State of Connecticut. Cosmar therefore argues, that based on the foregoing, it has established the elements necessary to prove a claim of equitable estoppel.
General Statutes 49-41(a) states in pertinent part:
 Before any contract . . . for the construction . . . of any public work of the state . . . is awarded to any person . . . that person shall furnish to the state . . . a bond in the amount of the contract which shall be binding upon the award of the contract to that person, with a surety . . . for the protection of persons supplying labor or materials in the prosecution of the work provided for in the contract. . . .
Clearly, ". . . the purpose of [a payment] bond under49-41 is to facilitate the expeditious and uninterrupted completion of public works by furnishing a means through which suppliers of labor and material in the prosecution of the work are afforded protection in extending credit to contractors." International Harvester Co. v. L.G. DeFelice Son, Inc.,151 Conn. 325, 333, 197 A.2d 638 (1964). The public, laborers and the materialmen rather than the general contractor, are the intended beneficiaries under the statute. Id. Although the general contractor has paid the subcontractor for the performance of the subcontract, that is not a defense that the general contractor can use in a suit by the materialman. Id.
"Estoppel is a question of fact that is determined by the trial court." Edart Truck Rental Corporation v. B. Swirsky Co., 23 Conn. App. 137, 142, 579 A.2d 133 (1990).
 "`Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, . . . as against another person, who has in good faith relied CT Page 3515 upon such conduct, and has been led thereby to change his position for the worse.' (Citations omitted.) Its two essential elements are that one party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act on that belief, and that the other party, influenced thereby, must change his position or do some act to his injury which he otherwise would not have done. (Citations omitted.)"
Emerick v. Emerick, 28 Conn. App. 794, 802-03, ___ A.2d ___ (1992), quoting Bozzi v. Bozzi, 177 Conn. 232, 241-42,413 A.2d 834 (1979). Furthermore, "[i]t is a long standing tenet of law of equitable estoppel that a party requesting such relief cannot contribute to the hardship claimed, through his own ignorance of the essential facts of the matter in question." Currie v. Marano, 13 Conn. App. 527, 531, 537 A.2d 1036, cert. denied,207 Conn. 809, 541 A.2d 1238 (1988).
Beard supported its motion for summary judgment with the affidavits of Fernando Constantini (President of Cosmar) and Brian Wright (an employee of Cosmar). Likewise, Cosmar filed two opposing affidavits along with its memorandum of law. The first affidavit, that of Fernando Constantini, is identical to the one filed by Beard. In that affidavit Constantini, as president of Cosmar, states that he contacted Beard, expressed his concern about Pave-Rite's credit-worthiness and offered to pay Beard directly for the materials purchased by Pave-Rite. Constantini further states that although Beard had knowledge that Pave-Rite was a credit risk, Beard, nevertheless, refused to accept Cosmar's check and instead stated that it was not necessary for Cosmar to pay Beard directly. He finally states, that in reliance on Beard's representation, he (Constantini) paid Pave-Rite for the services performed and materials supplied, and that he contacted Beard, informed it of the payment made and advised it to take whatever steps necessary to insure that it was paid by Pave-Rite.
The second affidavit, that of June E. Mitchell, states that as president of Pave-Rite, she accepted a check from Cosmar, deposited that check into a Pave-Rite checking account, and was subsequently notified that the Internal Revenue Service intended to levy Pave-Rite's checking account. She further CT Page 3516 states that these monies were to be used to pay Beard for the materials purchased, but that they were instead used to pay the Internal Revenue Service and other creditors.
The only other affidavit is that of Brian Wright (Cosmar's employee). As previously mentioned, this affidavit was filed with Beard's memorandum of law in support of its motion for summary judgment. In that affidavit, Wright states that he was present when Constantini presented a check to Mitchell for the materials supplied and that he was also present when Constantini telephoned Beard and informed it that Mitchell picked up a check which represented payment for those materials. Wright further states that following payment, he spoke to Beard personally and was informed that Mitchell wrote to Beard stating that Pave-Rite's bank account was attached by the IRS, but that Beard nonetheless conducted a private investigation and informed Wright that Pave-Rite had sufficient funds to pay Beard for the materials.
Beard claims that estoppel may only be used in instances of fraud and deliberate misrepresentations which lead to a detrimental reliance by the party claiming estoppel and cites case law in support of that position. However, Connecticut Courts have considered applying the estoppel doctrine in cases that do not involve fraud or deliberate misrepresentations. See, e.g., Edart Truck Rental Corporation v. B. Swirsky Co., supra; Emerick v. Emerick, supra; and Currie v. Marano, supra.
Furthermore, Beard's claim that the Connecticut Supreme Court decision of International Harvester Co., supra, rejects the principle of estoppel is tantamount at least to an overstatement, inasmuch as the defense of estoppel was not addressed by the court. Moreover, the facts cited in International Harvester Co. are inapposite to the ones involved in the issue in the instant case.
The court finds that both Cosmar's and Beard's affidavits raise a genuine issue of material facts involving whether Beard should be estopped from seeking payment from Cosmar.
Accordingly, the motion for summary judgment is denied.
Clarance J. Jones Judge CT Page 3517