[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action the plaintiff, Bourgeois Shaw, Incorporated ("B S"), originally sought to foreclose a mechanic's lien on the real property of Quadrangle Limited Partnership ("Quadrangle"). B S amended its complaint on March 6, 1991 to add Count Two, which seeks to recover from Quadrangle and Seaboard Surety Company ("Seaboard") as principal and surety, respectively, on a surety bond substituted for the mechanic's lien pursuant to Section 49-37
of the Connecticut General Statutes.
B S filed the mechanic's lien on the property of Quadrangle after it performed certain excavation work and erected a retaining wall on Quadrangle's property in June and July of 1986. On July 22, 1986 several large blocks of the wall shifted, causing the wall CT Page 9496 to "fail." After the failure of the wall Quadrangle had the back fill behind the wall removed and some of the wall itself dismantled to determine who was at fault for the wall failure.
Although B S instituted this action in 1987, its path to trial was impeded by a convoluted thicket of counterclaims and third-party actions brought by Quadrangle in which Quadrangle claimed that B S, Atlantic Pipe Corporation, another mechanic's lienor on the property, and Dr. Clarence Welti, a soils expert, were responsible for the failure of the wall and were liable in damages to Quadrangle.
B S is seeking to recover the amount of $278,293, statutory interest and attorney's fees. Quadrangle denies that any amount is due to B S because of a lien waiver provision in an unexecuted contract between Schnip Building Company ("Schnip"), Quadrangle's general contractor, and B S.
The court finds that on May 21, 1986 B S submitted a proposed contract to perform site excavation work and construct a "Doublewall" retaining wall on Quadrangle's property for a total price of $326,568. The proposal was orally accepted by Schnip several days after it was submitted. Under the proposal the amount B S charged to construct the retaining wall was $33,000.
The negligence of B S in constructing the wall was alleged by Quadrangle in its counterclaim. Quadrangle never alleged that B S improperly or negligently performed the vast majority of the work it did, yet Quadrangle has failed to pay B S for that work.
The court finds that B S performed the following work pursuant to an oral agreement with Schnip: moving approximately 30,000 cubic yards of soil and other on site material; excavation for a building; placement of five inch concrete pad; filling and compacting ten feet of bank run gravel under slab; placement of fifteen inches of bank run gravel under paving; construction of "Doublewall" retaining wall. B S performed the aforementioned services in a accordance with good construction practices and the "failure" of the retaining wall was not due to any negligence of B S. The reasonable value of the services is $278,293.
The issue of whether a lienor has waived his rights to file a mechanic's lien is ordinarily a question of fact for the trier. Pomarico v. Gary Construction, Inc., 5 Conn. App. 106, 112,497 A.2d 70, cert. denied, 197 Conn. 816, 500 A.2d 1336 (1985). Where, CT Page 9497 however, there is clear and definitive contract language, the scope and meaning of that language is not a question of fact but a question of law. Pero Building Co. v. Smith, 6 Conn. App. 180,184, 504 A.2d 524 (1986).
Quadrangle relies on waiver language contained in the small print of a preprinted contract which was sent by Schnip to B S on July 22, 1986, the day the retaining wall failed. As of that date B S had already completed the work for which it seeks payment. B S never signed that contract and never agreed to, or even discussed, the mechanic's lien waiver provision thereof. None of the witnesses called by Quadrangle testified to any discussions with B S about the lien waiver provision of the unsigned contract. Therefore, Quadrangle relies solely on an erroneous response to a production request in urging the court to find that B S waived its mechanic's lien rights.
On March 15, 1990, an attorney for B S responded to the following request for production:
 4. Identify all documents which you claim constitute the contract and/or agreements between Schnip Construction, Inc. and Bourgeois Shaw for the construction on the job which is the subject of the above-captioned action.
 Answer: See contract dated May 28, 1986 including Rider A and Rider B attached thereto.
A party's answers to interrogatories or production requests are not judicial admissions, but rather, non-binding evidentiary admissions. Piantedosi v. Florida, 186 Conn. 275, 278, 440 A.2d 977
(1982); Tait LaPlante, Handbook of Connecticut Evidence, section 6.7.2 at p. 134. B S should properly have responded to the aforementioned request in a manner which indicated that only portion of the unsigned contract constituted its agreement with Schnip. However, the mistake by B S is not sufficient to cause the court to ignore all of the evidence introduced at trial, which supports the position of B S that it never agreed to waive its mechanic's lien rights. Waiver is the intentional relinquishment of a known right. D'Amico v. Manson, 193 Conn. 144, 147,476 A.2d 543 (1984); A B Auto Salvage, Inc. v. Zoning Board of Appeals189 Conn. 573, 579, 456 A.2d 187 (1983). B S clearly did not CT Page 9498 waive its right to file a mechanic's lien.
The court awards B S the amount of $278,293 in damages against Quadrangle as principal on the bond and against Seaboard as surety on that bond.
B S also seeks to recover statutory interest against Quadrangle and Seaboard. Seaboard and Quadrangle contest their liability for statutory interest on the bond for the reason that the bond does not contain any provision for interest. This court is not aware of any case law which addresses the issue of whether mechanic's lienor may recover interest on a bond substituted for a mechanic's lien. Therefore, it is necessary to examine the relevant statutes, case law on surety bonds in general, and the language of the bond itself.
Section 49-37 of the Connecticut General Statutes provides in pertinent part:
 (a) Whenever any mechanic's lien has been placed upon any real estate . . . . the owner of the real estate . . . may make an application to any judge of the superior court that the lien be dissolved upon the substitution of a bond with surety. . . . If the judge is satisfied that the applicant in good faith intends to contest the lien, he shall, if the applicant offers a bond, with sufficient surety, conditioned to pay the lienor, such amount as a court of competent jurisdiction may adjudge to have been secured by the lien, with interest and costs, order the lien to be dissolved and such bond substituted for the lien . . . (emphasis added).
The bond is question is entitled "Release of Mechanic's Lien Bond" and provides that Quadrangle and Seaboard are jointly and severally liable in the sum of $280,000 for all judgements rendered against Quadrangle's property in favor of B S on the mechanic's lien. It recites the date of the mechanic's lien, September 23, 1986, and the volume and page of the land records in which the lien was recorded. It further states:
 Whereas, Quadrangle Limited Partnership, seeks to discharge said lien pursuant to Connecticut CT Page 9499 General Statutes Section 49-37.
The plaintiff argues that the language of section 49-37, which requires that a mechanic's lien bond secure interest and costs, should be read into the bond at issue. Notwithstanding the language from the bond set forth above, Quadrangle and Seaboard argue that the bond was not substituted for the lien pursuant to the provisions of section 49-37, but was done by agreement of the parties on a voluntary basis and, therefore, the provisions of section 49-37 do not apply to the bond.
In Six Carpenters, Inc. v. Beach Carpenters Corporation,172 Conn. 1, 7, 372 A.2d 123 (1976), the lienor claimed that where the parties agreed to substitute a bond for a mechanic's lien without court intervention, that the principal and surety on the bond could not move to modify or reduce the bond under section 49-37(b) because the bond had not been substituted for the lien pursuant to section 49-37(a). The Court held that the provisions of section49-37 applied to the bond, whether it was ordered substituted by the Court, or voluntarily substituted for the lien by agreement of the parties. The Court stated:
 The construction urged by the [lienor] would discourage the substitution of bonds by agreement because of a fear of waiving defenses to the underlying lien. Moreover, it would lead to public mischief by compelling judicial intervention when not needed nor desired.
In this case the construction urged by Seaboard and Quadrangle would discourage lienors from agreeing to substitute bonds for liens because of a fear of waiving rights under the lien. This would also encourage needless resort to the courts and would contravene the legislative intent of section 49-37 to enable the owner of property to obtain a dissolution of the mechanic's lien so long as the lienor's rights are not prejudiced. Henry F. Raab Construction, Inc. v. J. W. Fisher Co., 183 Conn. 108, 115,438 A.2d 838 (1981); Six Carpenters, Inc. v. Beach Carpenters Corporation, supra, at p. 6.
Reading the interest and cost provisions of section 49-37 into the bond is also warranted under International Harvester Co. v. L. G. DeFelice Sons, Inc., 151 Conn. 325, 333, 197 A.2d 638 (1964); New Britain Lumber Co. v. American Surety Co., 113 Conn. 1, 6, CT Page 9500154 A. 147 (1931), which provide that where a statutory bond is given, the provisions of the statute are read into the bond so that it is immaterial that the bond varies from the wording of the statute.
Based on the foregoing the provisions of section 49-37, which require that a mechanic's lien bond include payment of interest and costs, must be read into the present bond.
The determination of whether interest is a proper element of damages is to be made in view of the demands of justice. Scribner Sons v. O'Brien, 169 Conn. 389, 405, 363 A.2d 160 (1975). It is difficult to imagine circumstances in which a party is more deserving of interest than those of this case. Quadrangle never expressed dissatisfaction with any work of B S other than its work on the retaining wall. The retaining wall constituted approximately ten percent of the work performed by B S. B S has not received any payment.
After causing B S to suffer protracted delay in the prosecution of it mechanic's lien action, Quadrangle failed to prove that B S was negligent in any way with respect to the retaining wall. The award of interest in a mechanic's lien foreclosure has been upheld even where the defendant's failure to pay was done in good faith. General Electric Supply Co. v. Southern New England Telephone Co., 185 Conn. 583, 604,441 A.2d 581 (1981). In this case Quadrangle had no reason for withholding payment as to ninety percent of the work performed by B S Justice demands that B S receive interest and the court awards statutory interest in the amount of $197,124.21 against Quadrangle and Seaboard.
B S also seeks to recover attorney's fees from Quadrangle and Seaboard. It cannot recover such fees because the bond does not provide for attorney's fees and there is nothing in section 49-37
which requires the parties to a mechanic's lien bond to pay attorney's fees.
B S has argued that A. Secondino Sons, Inc. v. LoRicco,19 Conn. App. 8, 15-16, 561 A.2d 142 (1989) provides for the award of attorney's fees in mechanic's lien foreclosures. To the extent that argument is correct, it fails to recognize the difference between the award of attorney's fees in a foreclosure and the award of attorney's fees as damages on a bond.
In a mechanic's lien foreclosure action where there is no CT Page 9501 underlying obligation by the landowner to pay attorney's fees, such as this action, then any attorney's fees awarded are, in effect, only recoverable to the extent of the value of the liened property because a mechanic's lien is a claim on the land only. Section 49-33(b). Where a lien is substituted for a bond, the extent of the owner's liability becomes the amount of the bond plus interest and costs under section 49-37. The court has awarded B S almost the entire amount of the surety bond plus interest. Attorney's fees cannot properly be awarded against Quadrangle and Seaboard on the bond because the amount of the bond, which is the limit of Quadrangle's liability, is insufficient to pay them.
By the Court
Aurigemma, J.