BALDWIN–LIMA–HAMILTON CORPORATION *v.* THE
AETNA CASUALTY AND SURETY COMPANY ET AL.

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and MACDONALD, Js.

Argued May 2—decided July 5, 1972

*Francis J. McNamara, Jr.,* with whom were *John
F. Spindler,* and, on the brief, *Samuel V. Schoon-
maker III* and *Paul E. Knag,* for the appellant
(plaintiff).

*Donald F. Keefe,* with whom was *Elmer W.
Beasley,* for the appellees (defendants).

RYAN, J. This is an action brought by the plaintiff, the Baldwin–Lima–Hamilton Corporation, hereinafter referred to as Baldwin, on a payment bond issued by the defendants The Aetna Casualty and Surety Company, a Connecticut corporation, and the American Employers' Insurance Company and The Employers' Fire Insurance Company, both Massachusetts corporations, seeking payment of the balance due for materials furnished on a construction contract. The referee, acting as the court, rendered judgment for the defendants and the plaintiff has appealed to this court.

This action arose out of the construction of a bridge over Bridgeport harbor on the Connecticut Turnpike. The contract for the superstructure of the bridge was executed on January 31, 1956, by the highway commissioner for the state and by Terry Contracting, Inc., of the city of New York, hereinafter referred to as Terry. At the same time Terry filed the bond in question with the state. This was a payment bond required by statute for the protection and payment of subcontractors and materialmen on public works projects of the state. The defendants were sureties on the bond. In its substituted complaint the plaintiff alleged that between June 14, 1957, and December 17, 1957, it sold and delivered to Terry steel which was used in the bridge construction and that Terry has refused to pay the bill due in the sum of $534,328.18 and, accordingly, the conditions of the bond were breached; that this sum is due and owing from the defendants; that although demand has been made on the defendants they have failed and refused to pay. It was also alleged that on October 14, 1963, judgment was rendered against Terry on a counterclaim filed by the plaintiff in a suit brought by Terry in the Supreme

Court in the state of New York. The amount of the judgment was $530,000 plus interest of $175,960, a total of $705,960. The defendants have stipulated as to the essential factual allegations of the complaint, but interposed two special defenses, one of which is pertinent to this appeal wherein they allege that the statutory period during which the plaintiff could have brought this action has expired since this suit was not commenced within one year from the date of "final settlement" by the state of the Terry contract. Rev. 1949, §§ 7215, 7216. The defendants contend that a document entitled "Certified Statement of Date of Final Settlement of Contract" executed by the attorney general of the state conclusively establishes the "final settlement date" as April 14, 1960. The plaintiff's reply in avoidance alleges that April 14, 1960, is not the final settlement date since Terry, the contractor, had made a claim for extra work which was pending on that date and which was not finally refused by the state until April 3, 1961.

The gravamen of the plaintiff's appeal is an attack on the conclusions of the referee. The plaintiff contends that the attorney general's certification of April 14, 1960, as the date of final settlement is erroneous as a matter of law, and, in such a case, the court is not bound to accord the certificate conclusive effect. To review these claims it is necessary to examine the provisions of §§ 7214–7216 of the 1949 Revision (now §§ 49-41—49-43 of the General Statutes) which were in effect at the time the contract was made in the present case together with some of the additional subordinate facts from which the referee reached his conclusions.

Sections 7214–7216 are designed to protect subcontractors and materialmen on public works proj-

ects. Section 7214 requires that on any contract for the construction of any public work in this state, the general contractor must furnish to the state a payment bond with surety in the amount of the contract. Section 7215 permits those furnishing labor and materials to sue on the bond if they have not been paid within sixty days from the date on which the last of their labor was performed or materials supplied. Subsection (b) of § 7215 provides that "no such suit shall be commenced after the expiration of one year after the date of final settlement of such contract."[1] Section 7216 establishes the procedure whereby the attorney general will furnish to those authorized to sue under the provisions of § 7215 a certified statement of the date of final settlement of the contract. It provides that this statement "shall be conclusive as to such date upon the parties."

The referee found that none of the documents which comprise the contract between Terry and the state, including the payment bond, contains a reference to or definition of the term "final settlement." After the contract was signed, the highway department altered the method by which it determined the final settlement date of a contract, equating it with the date of the final estimate. This was never made a part of the Terry contract. Previously, the attorney general had equated "final settlement" with final payment. On April 14, 1960, the engineer of contracts and construction of the highway department approved the final estimate in the Bridgeport harbor project. On April 25, 1960, the state issued a "final

---

[1] The statute was amended in 1969 by striking out the words "date of final settlement of such contract" and substituting the words "day on which the last of the labor was performed or material was supplied by him." The amendment has no bearing on the present appeal.

payment" check to Terry. Terry obtained permission from the state to cash this check subject to a claim for extra work which it alleged it had performed. On December 30, 1960, Terry submitted its claim for extras which was denied by the state on April 3, 1961.

The referee also found that in February and March, 1959, the plaintiff notified the defendant and the highway department that it had not been paid and that it might be necessary for it to file a claim under the payment provision of the bond. On March 10, 1959, the plaintiff wrote to the attorney general and asked for a copy of the bond. This was obtained two weeks later. After the institution of this action and at the request of the defendant, the attorney general, on May 3, 1962, determined that April 14, 1960, was the date of final settlement of the Terry contract and certified this as provided for in § 7216. This date coincides with the date of approval of the final estimate on the Terry contract by the highway department. Prior to the commencement of this action, the plaintiff was not notified that a final settlement date had been established. The certificates of final settlement are issued on request but there was no evidence that the plaintiff had requested the certificate before starting this action.

The statutes involved in this case are similar to the federal statutes popularly known as the Miller Act. 40 U.S.C. §§ 270a–270d. For this reason the decisions of the federal courts relative to the Miller Act are helpful. *International Harvester Co.* v. *L. G. DeFelice & Son, Inc.*, 151 Conn. 325, 333, 197 A.2d 638. In the recent case of *Pittsburgh Plate Glass Co.* v. *Dahm*, 159 Conn. 563, 271 A.2d 55, we adopted the long-standing federal definition of "final settlement" which was then found in both the state and

federal statutes.[2] It does not mean final payment; rather it is " 'the administrative determination by the officer having the execution of the work in charge that it has been performed and his finally fixing the amount due'; *R. P. Farnsworth & Co.* v. *Electrical Supply Co.*, 112 F.2d 150, 152 (5th Cir.); *United States* v. *Arthur Storm Co.*, 101 F.2d 524, 526 (6th Cir.); or, as stated by the United States Supreme Court, the date of 'final settlement' is the date on which 'so far as the government was concerned, the amount which it was finally bound to pay or entitled to receive was fixed administratively by the proper authority.' *Illinois Surety Co.* v. *United States,* 240 U.S. 214, 221, 36 S. Ct. 321, 60 L. Ed. 609; *United States Fidelity & Guaranty Co.* v. *United States,* 65 F.2d 639, 641 (9th Cir.)." *Pittsburgh Plate Glass Co.* v. *Dahm,* supra, 567.

The plaintiff does not disagree with this definition. It contends, however, that when applied to the facts of this case, it is apparent that the final settlement did not occur on April 14, 1960, since Terry had an outstanding claim for extra work on that date. Nevertheless, in this case we have a certified statement by the attorney general of the final settlement date. The statute makes the date so certified conclusive on the parties. Under the Miller Act, the certification by the federal officer corresponding to the attorney general, namely, the comptroller general, similarly is made conclusive on the parties as to the final settlement date. Because of this, the federal courts have implemented the legislative intent by according a very restricted review to the

---

[2] The federal statute also was amended by deleting the words "date of final settlement of such contract" and substituting the words "day on which the last of the labor was done or performed by him or material was furnished or supplied by him." 40 U.S.C. § 270b.

action of the comptroller general. "[I]t is necessary to establish fraud or such gross mistake as would imply bad faith before the certificate of the Comptroller General can be set aside." *Peerless Casualty Co.* v. *United States,* 241 F.2d 811, 817 (1st Cir.). Otherwise his is an act of "absolute, unreviewable discretion." *United States Fidelity & Guaranty Co.* v. *Hendry Corporation,* 391 F.2d 13, 15 (5th Cir.). "The conclusive determination of the final settlement date of a contract by the Comptroller General as provided by 40 U.S.C.A. § 270c is an essential prerequisite to the running of the one year statute of limitations provided in 40 U.S.C.A. § 270b (b). It seems that Congress sought to expedite the determination of these matters by placing them in the hands of the Comptroller General who is best equipped to deal with them. If it wanted to extend the reviewability thereof by the courts it could have employed language to that effect." *Peerless Casualty Co.* v. *United States,* supra, 816. "The courts do not inquire whether there has in fact been a final settlement of a contract and it would obviously be contrary to the interests of material men, laborers, and others to have a court make such an inquiry into the validity of the Comptroller General's determination, for this would undo the very purpose which Congress had in mind when it allowed claimants to bring suit without necessarily waiting for final settlement of absolutely every claim which might be made in connection with the contract." *United States* v. *Frankini Construction Co.,* 139 F. Sup. 153, 155 (D. Mass.).

There is nothing in our statute from which we can infer an intent on the part of the legislature which is any different from that of the Congress of the United States in enacting the Miller Act. The

purposes served by the two acts are parallel. The procedures are practically the same. Furthermore, the language is almost identical. In each act the determination of the administrative officer as to the final settlement date is made conclusive on the parties. We cannot ignore the plain and obvious import of the legislature's action in choosing the Miller Act as a model for our own statute and the purposeful selection of the word "conclusive" to describe the effect of the attorney general's certification of the final settlement date.

The plaintiff cites cases where we have held that a statutory provision making an administrative determination "final" or "conclusive" does not preclude an attack on the ground that an error of law has been committed. See *Newington* v. *Mazzoccoli,* 133 Conn. 146, 48 A.2d 729; *Equitable Life Assurance Society* v. *Slade,* 122 Conn. 451, 190 A. 616; *Connecticut Mutual Life Ins. Co.* v. *Rogers,* 113 Conn. 14, 154 A. 246. In the case before us these cases are inapposite. In certifying a date as the date of final settlement, the attorney general is not called on to apply some external, legal standard to a set of facts, nor is it possible for him in this situation to act in a way which violates the provisions of other statutes. Final settlement is a matter of fact, not a question of law. It does not depend on the agreement or concurrence of other parties. It refers to unilateral administrative action which of necessity must be taken without reference to § 7215 of the Revision of 1949. The state at some point must determine for purposes of payment what it feels it is obligated to do to discharge its obligation under the contract. What, in fact, it is required to pay is not in question in establishing a final settlement. The legislature has not provided for an appeal from the

attorney general's certificate since, inter alia, the correctness of his decision is not at issue. There would be very little, if anything, for us to review. The standard requiring fraud or such gross mistake as to imply bad faith is adequate to protect against action which is totally arbitrary or which is designed to injure someone in the exercise of his legal rights.

When the plaintiff was not paid within sixty days from the day it last supplied steel to Terry, the statute authorized it to seek redress against the bond. The plaintiff obtained this right on February 15, 1958. At no time thereafter did the plaintiff attempt to avail itself of the statutory procedure through which it could have learned when its right to sue would terminate. In February and March, 1959, the plaintiff notified the state and the defendant that it might have to bring an action on the bond. In April, 1959, the plaintiff utilized § 7216 of the Revision of 1949 to obtain from the attorney general certified copies of the Terry contract and bond in order to get the benefit of the provision in that statute which makes such certified copies prima facie evidence of the contents, execution and delivery of the original. Yet, it was not until March 22, 1962, that the plaintiff started this suit. We know of no rule of general application which requires that notice be given of the day the Statute of Limitations begins to run. Here, for all intents and purposes, the plaintiff had three years in which to bring its suit. For some reason which does not appear of record it failed to do so.

The conclusions of the referee cannot be disturbed. There is no error.

In this opinion the other judges concurred.