JOSEPH P. SIUDYLA ET AL. *v.* CHEMEXEC RELOCATION
SYSTEMS, INC., ET AL.
(8487)

DALY, NORCOTT and LAVERY, Js.

Argued April 4—decision released September 11, 1990

*Mark V. Oppenheimer,* with whom was *Judith S.
Nickse,* for the appellants (plaintiffs).

*Brendan J. O'Rourke,* with whom, on the brief, was *Edward V. O'Hanlan,* for the appellees (named defendant et al.).

DALY, J. The plaintiffs appeal from the trial court's decision granting summary judgment in favor of the defendants J. Christine Mangano, James A. Mangano and ChemExec Relocations Systems, Inc. (hereinafter the defendants), as to counts one, two and four of the plaintiffs' substitute complaint.[1] The plaintiffs brought suit against the defendants for damages arising out of a contract to buy the defendants' property. Shortly after taking up residence, the plaintiffs discovered that the well on the property failed to produce sufficient water for their needs. In response to the plaintiffs' substituted complaint, the defendants filed a motion for summary judgment on April 18, 1989, only as to counts one, two and four. In the first count, the plaintiffs alleged that the defendants, through their agent, had fraudulently misrepresented that the defendants' property was in good condition and not in need of any major repairs, whereas the defendants knew that the well was faulty. The plaintiffs relied upon this misrepresentation, purchasing the property to their detriment. In the second count, the plaintiffs alleged that the defendants had fraudulently concealed the defects in the well. The fourth count is directed solely against ChemExec Relocation Services, Inc. (ChemExec), alleging a violation of the Connecticut Unfair Trade Practices Act (CUTPA). General Statutes § 42-110a et seq. In this count, the plaintiffs alleged that ChemExec obscured its legal relationships, obligations, and duties in real estate transactions, thereby engaging in unfair trade practices.

---

[1] The defendants Emmett M. Westfall, doing business as Westfall Realty, and D & L Home Inspection Service Corporation were not parties to this summary judgment motion. Count one also names Westfall and count three is solely against D & L Home Inspection Services Corporation.

After oral argument, the trial court granted the defendants' motion for summary judgment and issued a memorandum of decision dated September 18, 1989. The trial court considered the affidavits submitted by the plaintiffs as insufficient evidence to meet the high standard of proof required to prove fraudulent concealment and misrepresentation by clear, precise, and unequivocal evidence. See *Bound Brook Assn.* v. *Norwalk,* 198 Conn. 660, 666, 504 A.2d 1047, cert. denied, 479 U.S. 819, 107 S. Ct. 81, 93 L. Ed. 2d 36 (1986); *Rego* v. *Connecticut Insurance Placement Facility,* 22 Conn. App. 428, 430, 577 A.2d 1105 (1990). This appeal ensued.

The plaintiffs' claim that the trial court decided issues of material fact in favor of the defendants and thus improperly granted the defendants' motion for summary judgment. We agree as to counts one and two, and disagree as to count four.

This court reviews the propriety of a summary judgment by examining whether "the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 384; *Maruca* v. *Standard,* 19 Conn. App. 16, 18, 559 A.2d 1167 (1989).

To support their motion for summary judgment, the defendants offered the inspection report of Bruce P. Barber, the contract of sale, a letter dated July 28, 1987, from the defendants to the plaintiffs, the plaintiffs' answers to the defendants' interrogatories, the inspection report of D & L Home Inspection Service Corporation performed at the plaintiffs' request, the affidavit of a ChemExec agent who coordinated the Manganos' property sale, and the affidavit of the defendants J. Christine Mangano and James A. Mangano. Barber inspected the property at the defendants' request and D & L Home Inspection Service Corporation examined

the property for the plaintiffs. Neither report noted any well capacity problems, although the Barber report specified that the water pressure fluctuated, indicating that some service was necessary. An addendum to the sales contract stipulated that the sale of the property was "as is." The letter from ChemExec accompanying the contract informed the plaintiffs that ChemExec was not the owner of record but the contract owner and thus could not make any representations about the property. In the interrogatories, the plaintiffs answered in the negative when asked whether the defendants told them that the well was in good condition and not in need of any major repair. The affidavits of a ChemExec agent and the Manganos deny that any representations about the well were made to the plaintiffs and deny any knowledge that the well was failing. Furthermore, the Manganos assert that they never experienced a problem with the well producing sufficient water for their use.

The plaintiffs offered their own affidavit as well as affidavits by Joan Germano, a neighboring property owner, and Bill Melko, a professional well pump installer, to counter the defendants' motion. Germano acknowledged that while she had no direct knowledge of the well in September, 1987, the month the plaintiffs completed the purchase and took possession of the property, she stated that all the wells in the development could be considered "low producers." She also stated that during the prior year she and other neighbors had been obligated to replace their wells, and that they and the Manganos rented portable toilets when they had parties, primarily to conserve water. Germano also disclosed that J. Christine Mangano spoke to her about the defendants' water problem approximately one year before the sale. In his affidavit, Melko stated that he found the plaintiffs well dry on September 13, 1987, and that it was unlikely to have become dry in

just a few months. He acknowledged that he had no direct knowledge of the well at the time of the alleged fraud and misrepresentation. The plaintiffs stated in their affidavit that the defendants' agents had, on several occasions prior to the sale, orally represented and assured them that the well was in good repair and adequate for their needs.

The trial court stated in its memorandum of decision that the plaintiffs' affidavits "fail to present evidence that clearly, precisely, and unequivocally supports the plaintiffs' claims of misrepresentation and fraudulent concealment. This lack of evidence is underscored when it is contrasted with the substantial evidence, e.g., the home inspection reports that accompany the defendants' motion for summary judgment. Under these circumstances, the plaintiffs have not presented 'clear, precise, and unequivocal' evidence of fraudulent concealment and misrepresentation."

In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist. *Nolan* v. *Borkowski,* 206 Conn. 495, 500, 538 A.2d 1031 (1988). If a genuine issue exists, it must be left to a later determination after a full hearing. *Telesco* v. *Telesco,* 187 Conn. 715, 718, 447 A.2d 752 (1982).

In dealing with the first two counts in the present case, the trial court did not confine itself to deciding whether material issues of fraudulent concealment and misrepresentation existed. Rather, the trial court weighed the plaintiffs' evidence against the defendants' evidence and found that the former did not meet the standard of "clear, precise and unequivocal evidence" necessary to prove fraudulent concealment. *Bound Brook Assn.* v. *Norwalk,* supra. The plaintiffs did not have to meet this standard of proof to survive a motion for summary judgment. On the contrary, the party

moving for summary judgment has the burden of showing the absence of any genuine issue to all the material facts under the applicable principles of substantive law. *D.H.R. Construction Co.* v. *Donnelly,* 180 Conn. 430, 434, 429 A.2d 908 (1980). As the burden of proof is on the moving party, the evidence must be viewed in the light most favorable to the opponent. Id. Here, the plaintiffs' evidence contradicted the defendants' assertions on several points.

For example, one defendant allegedly discussed her well problem with a neighbor during the year prior to the sale. Further, the evidence of the Barber inspection, viewed in a light most favorable to the plaintiffs, indicates that there were water pressure problems known to the defendants prior to the sale. In contrast, the Manganos deny ever having problems with the well. In light of the plaintiffs' pleadings and affidavits opposing the defendants' motion, and the inferences that could reasonably be drawn therefrom, the material issue of the defendants' knowledge of the well problems prior to the sale is unresolved. See *De Dominicis* v. *American National Fire Ins. Co.,* 2 Conn. App. 686, 687, 483 A.2d 616 (1984). The defendants' knowledge is an element of both fraudulent misrepresentation and fraudulent concealment. See *Marchand* v. *Presutti,* 7 Conn. App. 643, 645, 509 A.2d 1092 (1986); *Karvarco* v. *T.J.E., Inc.,* 2 Conn. App. 294, 295–96, 478 A.2d 257 (1984).

Another unresolved material issue is the nature of the agency relationship between the defendants and Westfall Realty and the extent to which the defendants are liable for any misrepresentations made by their alleged agent. The plaintiffs' first count alleges that Westfall was the agent acting on behalf of the defendants. The defendants have not addressed these issues and thus have not met their burden in moving for sum-

mary judgment. *D.H.R. Construction Co.* v. *Donnelly,*
*supra.* The material issues of the agent's authority and
the facts misrepresented are unresolved and require
a full hearing. See, e.g., *Nowak* v. *Capitol Motors, Inc.,*
158 Conn. 65, 255 A.2d 845 (1969); *Presta* v. *Monnier,*
145 Conn. 694, 146 A.2d 404 (1958).

Because the pleadings, affidavits and other proof sub-
mitted by the parties leave open for resolution by a trier
of fact the question of whether the defendants or their
agents fraudulently concealed or misrepresented the
well's condition, genuine issues of material fact remain
unresolved and the trial court should not have granted
summary judgment for the defendants as to counts one
and two.

The plaintiffs also claim that the trial court should
not have granted summary judgment for the defend-
ant ChemExec on count four, the plaintiffs' CUTPA
allegation. We disagree. The gravamen of the plain-
tiffs' allegation in this count is that ChemExec com-
mitted fraud by obscuring its relationship to the subject
property as a contract owner, when the Manganos were
the record title owners. The plaintiffs allege that
ChemExec schemed to sell the property as an owner
without making the "representations normally given
to residential home buyers," and that this alleged
scheme was an unfair trade practice in violation of
CUTPA. The trial court considered the pleadings, affi-
davits and other proof submitted by the parties, con-
cluding that ChemExec did not engage in conduct that
could be considered a violation of CUTPA.

Adopting the federal "cigarette rule"[2] to determine
whether certain business practices violate CUTPA,

---

[2] The federal "cigarette rule" derives its name as a result of the rule's
being articulated for the first time in Statement of Basis and Purpose of
Trade Regulation Rule 408, Unfair or Deceptive Advertising and Label-
ing of Cigarettes in Relation to the Health Hazards of Smoking. 29 Fed.
Reg. 8355 (1964).

Connecticut courts have examined the following factors: " '(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).' " *FTC* v. *Sperry & Hutchinson Co.,* 405 U.S. 233, 244–45 n.5, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972); *McLaughlin Ford, Inc.* v. *Ford Motor Co.,* 192 Conn. 558, 567–68, 473 A.2d 1185 (1984); *Conaway* v. *Prestia,* 191 Conn. 484, 492–93, 464 A.2d 847 (1983).

Here, the trial court found uncontested facts that defeated the plaintiffs' allegations. First, the plaintiffs reviewed the sale contract with their attorney and were legally counseled prior to its execution. Second, ChemExec explicitly advised the plaintiffs that it was a relocation company and not in a position to make any representations about the property. Finally, the plaintiffs conceded that they purchased the property "as is." Even when read in a light most favorable to the plaintiffs, these facts demonstrate that ChemExec was candid in its role as the contractual seller and gave full notice to the plaintiffs regarding its role. As alleged by the plaintiffs, there did not exist any material fact before the trial court to support their fourth count. Accordingly, the trial court properly granted summary judgment on that claim.

The judgment is reversed as to counts one and two and the case is remanded for further proceedings with regard to those counts; the judgment for the defendants as to count four is affirmed.

In this opinion the other judges concurred.