L. SUZIO CONCRETE COMPANY, INC. *v.* NEW HAVEN TOBACCO, INC., ET AL. (10767)

FOTI, HEIMAN and FREEDMAN, Js.

Argued June 2—decision released August 18, 1992

*Jeffrey M. Krupnikoff,* for the appellant (plaintiff).

*Leonard A. Fasano,* for the appellees (defendants East Haven Economic Development Commission et al.).

FREEDMAN, J. This appeal comes to us on a reservation of legal issues pursuant to General Statutes § 52-235[1] and Practice Book § 4147.[2] The stipulation of the parties[3] presents two questions for the advice of this court: "(a) Is the [Land Disposition Agreement] for the conveyance of parcel #18 owned by the Town of East Haven within the East Haven Industrial Park a public works contract as defined in General Statutes

[1] "[General Statutes] Sec. 52-235. RESERVATION OF QUESTIONS OF LAW. (a) The superior court, or any judge of the court, with the consent of all parties of record, may reserve questions of law for the advice of the supreme court or appellate court in all cases in which an appeal could lawfully have been taken to said court had judgment been rendered therein.

"(b) The court or judge making the reservation shall, in the judgment, decree or decision made or rendered in such cases, conform to the advice of the supreme court or the appellate court."

[2] "[Practice Book] Sec. 4147. [RESERVATIONS]—— ——IN GENERAL

"A reservation shall be taken to the supreme court or to the appellate court from those cases in which an appeal could have been taken directly to the supreme court or to the appellate court, respectively, had judgment been rendered. Reservations in cases where the proper court for the appeal cannot be determined prior to judgment shall also be taken directly to the supreme court.

"All questions presented for advice shall be specific and shall be phrased so as to require a Yes or No answer.

"The court will not entertain a reservation for its advice upon questions of law arising in any action unless the question or questions presented are such as are, in the opinion of the court, reasonably certain to enter into the decision of the case, and it appears that their present determination would be in the interest of simplicity, directness and economy of judicial action.

"The advice of the appellate court on a reservation may be reviewed by the supreme court only upon the granting of certification as provided by chapter 72."

[3] The parties to this appeal are the plaintiff and the following defendants: the town of East Haven; its mayor, Robert M. Norman; the East Haven economic development commission; and the commission's chairperson, Joseph T. Bittner. The named defendant is not a party to this appeal, all claims against that party having been withdrawn prior to this appeal.

§ 49-41? [and] (b) When the private party to a General Statutes § 49-41 public works contract has not provided a labor and material payment bond in the amount of the contract, is the act of forebearing from entering into the contract a ministerial act of the public official with respect to a materialman supplying the contract?" Because the involvement of the town of East Haven in the construction contemplated on parcel eighteen was minimal, we conclude that the contract conveying the land in question to a private entity for development is not a public works contract within General Statutes (Rev. to 1987) § 49-41.[4] We therefore answer the first question in the negative and need not answer the second question.

For purposes of this reservation, the parties stipulated to the following facts. The town of East Haven is a Connecticut municipality, and a subdivision of the

---

[4] "[General Statutes (Rev. to 1987)] Sec. 49-41. PUBLIC STRUCTURES. BONDS FOR PROTECTION OF EMPLOYEES AND MATERIALMEN. (a) Before any contract exceeding one thousand dollars in amount for the construction, alteration or repair of any public building or public work of the state or of any subdivision thereof is awarded to any person, that person shall furnish to the state or the subdivision a bond in the amount of the contract which shall be binding upon the award of the contract to that person, with a surety or sureties satisfactory to the officer awarding the contract, for the protection of persons supplying labor or materials in the prosecution of the work provided for in the contract for the use of each such person, provided that no such bond shall be required to be furnished in relation to any general bid in which the total estimated cost of labor and materials under the contract with respect to which such general bid is submitted is less than ten thousand dollars or in relation to any sub-bid in which the total estimated cost of labor and materials under the contract with respect to which such sub-bid is submitted is less than twenty thousand dollars.

"(b) Nothing in this section or sections 49-41a to 49-43, inclusive, shall be construed to limit the authority of any contracting officer to require a performance bond or other security in addition to the bond herein referred to, except that no such officer shall require a performance bond in relation to any general bid in which the total estimated cost of labor and materials under the contract with respect to which such general bid is submitted is less than ten thousand dollars or in relation to any sub-bid in which the total estimated cost of labor and materials under the contract with respect to which such sub-bid is submitted is less than twenty thousand dollars."

state of Connecticut. The town of East Haven, by virtue of General Statutes §§ 7-136 and 7-486, as amended, established the East Haven economic development commission (commission). The commission has been involved with the development of a particular area in East Haven known as the East Haven Industrial Park (industrial park), pursuant to an industrial development plan.

The industrial park consists of approximately 228 acres of land and is dedicated to building a strong tax base for the town of East Haven by appealing to certain businesses to locate there. In order to enable East Haven and the commission to achieve the objectives of an industrial park, the state has undertaken to provide, and has provided, substantial aid and assistance to the commission to meet the net project costs for obtaining the land and development of the industrial park in the form of bond moneys allowing the town of East Haven and the commission to buy out or to foreclose on various parcels to create the 228 acre industrial park. The industrial park development has added jobs and increased the tax base of East Haven and has done so particularly with respect to parcel eighteen purchased by the New Haven Tobacco Company (Tobacco).

Tobacco, a privately held corporation, entered into the commission's standard land disposition agreement (agreement) with the town of East Haven and the commission on March 10, 1987. Within the confines of the restrictions placed on it by the agreement, Tobacco's business was and is operated exclusively by the private entity and consists of manufacturing and storing goods for its own private profit. The structure built on parcel eighteen is not open to the general public and no governmental functions are conducted on its premises.

The agreement specified that the town of East Haven and the commission would sell parcel eighteen of the

industrial park to Tobacco for $80,704 under specified terms. Tobacco signed the agreement and tendered its deposit on March 10, 1987. The agreement was recorded on land records in East Haven on the same day. The agreement was fully executed and acknowledged by the town of East Haven, the commission and Tobacco. Both Robert Norman, acting for the town of East Haven, and Joseph Bittner, acting for the commission in signing the agreement, were acting within the scope of their respective public authorities. The agreement contains many conditions regarding revesting of title, construction, use and maintenance. A further condition of the agreement is that the foundation of Tobacco's proposed building on parcel eighteen had to be constructed prior to the conveyance of parcel eighteen to Tobacco. Within the confines of the agreement's conditions and restrictions, Tobacco undertook the construction of an office and manufacturing building. Normally, building plans would be approved by the commission before an agreement was signed.

The foundation construction condition is written into the standard agreement to safeguard against land speculation by potential redevelopers. The commission was wary of nonconstruction by the redeveloper and then a resale of the parcels because the parcels were sold by the commission at a price somewhat below the fair market value. The construction of the foundation before conveyance was intended to have the redeveloper fulfill its commitment to construct its proposed building.

Tobacco entered into a construction contract with Long Construction Company (Long) for the construction of its proposed office and manufacturing building on parcel eighteen. In accordance with the agreement, all plans and specifications with respect to the construction of improvements were reviewed by the commission to ensure its conformity with industrial

development plans for the industrial park. Only Tobacco negotiated with Long regarding construction tasks such as prices, payment terms and subcontractors to be used on the job. The moneys used to obtain, grade and prepare the 228 acres of land to become the industrial park, including parcel eighteen, were public. The commission, through the agreement, imposed conditions on the use, construction and maintenance of parcel eighteen. The moneys used for the construction of the building itself were not from public funds but from private capital supplied by Tobacco. On March 10, 1987, parcel eighteen was expected to be conveyed to Tobacco after the foundation was completed. On June 16, 1988, the property, with the completed foundation, was conveyed to Tobacco subject to the right of reversion to the commission provided in the agreement. The deed was recorded in the East Haven land records on June 21, 1988. Tobacco presently enjoys the benefit of having its business within the industrial park.

After the recording of the agreement on the East Haven land records and after Tobacco and Long had entered into their construction agreement, a foundation was erected on parcel eighteen. The plaintiff, L. Suzio Concrete Company, Inc. (Suzio), supplied the materials for the foundation erected on parcel eighteen to Long from September 10, 1987, to March 23, 1988. Suzio was left a total unpaid balance of $35,896.27 plus interest for materials delivered to the parcel eighteen foundation. Between May 16 and May 26, 1988, Suzio sought to place a mechanic's lien on parcel eighteen, but its search of title on the East Haven land records showed parcel eighteen was owned by the municipality. Between May 16 and May 26, 1988, Suzio inquired of the town and of the commission if a bond had been obtained and was advised that no bond had been obtained regarding parcel eighteen. On May 27, 1988, Suzio made demands on Long, Tobacco, the town of

East Haven and the commission for payment in the amount of $35,896.27 for materials delivered to parcel eighteen. Long filed for bankruptcy on July 17, 1989, and obtained relief. At no time did the defendants Bittner or Norman, or any other agent of either the town of East Haven or the commission request, receive, or obtain from Tobacco or any other entity, a bond regarding the agreement for parcel eighteen, particularly a labor and material payment bond for improvements to parcel eighteen during the period of time that the town was record owner of the property and during which time the foundation was being constructed with Suzio's materials.

Suzio brought this civil action against Tobacco, the town of East Haven, its mayor, the commission and its chairman for entering into a public works contract without first obtaining a bond in accordance with the mandates of General Statutes § 49-41. All claims against Tobacco have been withdrawn by both Suzio and the East Haven defendants. The town of East Haven, by agreement, will indemnify the mayor and the commission chairperson against any judgment rendered against them in this action.

The first question reserved for our advice requires us to determine whether the agreement here was a contract for the construction of a "public work" of the town of East Haven within the meaning of General Statutes § 49-41. At the time that the agreement was signed, § 49-41 (a) provided, in pertinent part, that "[b]efore any contract exceeding one thousand dollars in amount for the construction, alteration or repair of any public building or public work of the state or of any subdivision thereof is awarded to any person, that person shall furnish to the state or the subdivision a bond in the amount of the contract . . . ." Neither § 49-41 nor the case law interpreting it provides any definition of what constitutes a "public work" of a town which

invokes the bonding requirements of the statute. Because § 49-41 is intended to operate in general conformity with the federal statutes popularly known as the Miller Act, 40 U.S.C. § § 270a through 270e; *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.,* 207 Conn. 468, 476 n.7, 542 A.2d 692 (1988); *Internal Harvester Co.* v. *L. G. DeFelice & Son, Inc.,* 151 Conn. 325, 331–33, 197 A.2d 638 (1964); we look to the interpretation of the federal statute for guidance.

The Miller Act, like § 49-41, does not define the term "public work." The United States Supreme Court has concluded, however, that public works under the Miller Act are "projects of the character heretofore constructed or carried on . . . with public aid to serve the interests of the general public." *United States Use of Noland Co.* v. *Irwin,* 316 U.S. 23, 30, 62 S. Ct. 899, 86 L. Ed. 1241 (1942). While the cases applying the Miller Act and its counterparts under state statutes have identified various factors that are used in determining whether a particular construction project qualifies as a public work; see generally annot., 48 A.L.R. 4th 1170, 1182–85; no one factor is determinative. The application of the *Irwin* definition is necessarily made on a case-by-case basis, and where a project involves publicly assisted construction of buildings for private use, such as is at issue in this case, the determination of whether the project is a public work turns on "the facts determining the degree of intimacy of the [governmental] connection with the particular project." Id., 1202.

We conclude that the agreement involving parcel eighteen of the East Haven industrial park was not a contract for a public work within § 49-41. The purpose of the agreement was to promote local economic development pursuant to chapter 132 of the General Statutes through the acquisition and transfer of real property. See General Statutes § 8-193. The agreement

was simply a contract to sell real property in the industrial park, with conditions attached to ensure the development and use of the property in a manner consistent with the local plan of development. One such condition, of course, was the construction of a foundation prior to conveyance. This condition, however, was only intended to prevent land speculation in the industrial park, thereby ensuring the proper development of the industrial park. The foundation condition in the agreement did not convert the agreement into a contract for the construction of the foundation.

The contract detailing the specifications for the entire building to be constructed on parcel eighteen, including the foundation, was the contract subsequently entered into between Tobacco and Long. This contract for the actual construction of the building was negotiated between Tobacco and Long without municipal involvement. Tobacco and Long determined the payment arrangements, the subcontractors and the various construction specifications. The completed building houses Tobacco's business and is operated by a private entity for the manufacture and storage of goods for private profit. The completed building is privately owned, not open to the general public, and no governmental functions are conducted on the premises.

The plaintiff stresses the fact that the municipality was the record owner of parcel eighteen when the agreement was signed and when the plaintiff delivered its concrete to the general contractor at the construction site on parcel eighteen. We are not persuaded that this fact alone changes the essentially private nature of the construction work done on parcel eighteen into public work for purposes of § 49-41. At all times relevant to this case, it was expressly contemplated that parcel eighteen would be conveyed by the town to Tobacco once construction of the foundation was com-

pleted. The property was, in fact, conveyed to Tobacco less than three months after the plaintiff last delivered materials to the construction site.

Under similar circumstances, the Supreme Court of Rhode Island determined that a facility owned and financed by the Rhode Island Port Authority and Economic Development Corporation but operated exclusively by private industry was not a "public work" under a Rhode Island bonding statute similar to § 49-41. *James J. O'Rourke, Inc.* v. *Industrial National Bank,* 478 A.2d 195 (R.I. 1984). After noting the lack of state involvement in the construction or operation of the meat processing plant at issue, the *O'Rourke* court concluded that the manufacturing plant there "cannot be classified as a public work. By no stretch of the imagination can the plant be considered a public building; it is not open to the general public and no governmental functions are conducted with public funds, and the necessary private capital was supplied by the bank. Whatever profits result from [the plant's operations] will be earmarked for [the corporation's] shareholders rather than the State of Rhode Island." Id., 198. Likewise, the Minnesota Court of Appeals, in determining whether a bus remanufacturing plant constructed on a parcel developed in part through tax increment financing was a public work for purposes of the Minnesota bonding statute, concluded that such publicly assisted, private development projects "are not even colorably public works. Public works are typified by sewer systems, streets and roads, schools and other projects owned and paid for by the government, exempt from property taxes and put to the common use. A private, commercial, industrial project is simply not the same kind of enterprise." *Judd Supply Co.* v. *Merchants & Manufacturers Ins. Co.,* 448 N.W.2d 895, 899 (Minn. App. 1989).

Because the LDA at issue in the present case was, at its core, a contract for the sale of land and because the involvement of the town of East Haven in the construction that took place on the land was minimal at best, we conclude that the agreement for the conveyance of parcel eighteen owned by the town of East Haven within the East Haven industrial park is not a public works contract under § 49-41. In light of our negative answer to the first question reserved for our advice, we will not address the second question presented to us. *Barr* v. *First Taxing District,* 147 Conn. 221, 158 A.2d 740 (1960).

To the first question in the reservation, we answer "No." The second question will not be answered.

No costs will be taxed to either party.

In this opinion the other judges concurred.