## O AND G INDUSTRIES, INC. *v.* TOWN OF NEW MILFORD
### (11048)

DALY, FOTI and LANDAU, Js.

Argued October 27—decision released December 29, 1992

*George C. Hastings,* with whom was *David J. Sheldon,* for the appellant (defendant).

*Robert L. Trowbridge,* for the appellee (plaintiff).

DALY, J. The defendant town of New Milford appeals from the trial court's judgment in favor of the plaintiff subcontractor, O and G Industries, Inc., for damages incurred when the general contractor hired and paid

by the defendant failed to pay the plaintiff before filing bankruptcy. The plaintiff had alleged that the defendant was liable in tort because it failed to secure a payment bond pursuant to General Statutes § 49-41.[1]

The following facts are not disputed. On May 1, 1990, the defendant informed Austin Driveway Services, Inc., the general contractor, that it was the successful bidder on a paving contract for public roads and parking lots in New Milford. The general contractor hired the plaintiff to supply materials for the paving operation. After the defendant paid the general contractor in full, the general contractor filed for bankruptcy without having paid the plaintiff the amount owed on the materials the plaintiff had supplied. A payment bond was never furnished by the general contractor to protect the plaintiff. The plaintiff brought suit against the town of New Milford and both parties moved for summary judgment. The trial court rendered judgment in favor of the plaintiff in the amount of $93,334.95 plus interest.

The sole issue before us is whether § 49-41 imparts a ministerial duty on a municipality to obtain a payment bond from a general contractor hired to perform a public project. We find that it does not.

This is an issue of first impression in Connecticut.[2] "This court reviews the propriety of a summary judgment by examining whether 'the pleadings, affidavits

---

[1] General Statutes § 49-41 (a) provides in pertinent part: "Before any contract exceeding twenty-five thousand dollars in amount for the construction, alteration or repair of any public building or public work of the state or of any subdivision thereof is awarded to any person . . . that person shall furnish to the state or the subdivision a bond in the amount of the contract which shall be binding upon the award of the contract to that person . . . ."

[2] It is true that our Supreme Court has held that under this statute any public works contract executed without the issuance of a payment bond is invalid. *Norwalk* v. *Daniele,* 143 Conn. 85, 89, 119 A.2d 732 (1955) (city

and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Practice Book § 384; *Siudyla* v. *ChemExec Relocation Systems, Inc.,* 23 Conn. App. 180, 182, 579 A.2d 578 (1990). The evidence is viewed in the light most favorable to the opponent of the summary judgment. Id., 185." *Ditchkus Real Estate Co.* v. *Storm,* 25 Conn. App. 51, 53, 592 A.2d 959, cert. denied, 220 Conn. 905, 593 A.2d 971 (1991). We find that, as a matter of law, the plaintiff was not entitled to prevail.

"When the language of the statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. *Winslow* v. *Lewis-Shepard, Inc.,* 216 Conn. 533, 538, 582 A.2d 1174 (1990), quoting *State* v. *White,* 204 Conn 410, 421, 528 A.2d 811 (1987)." (Internal quotation marks omitted.) *Beizer* v. *Goepfert,* 28 Conn. App. 693, 698, 613 A.2d 1336 (1992). The language of § 49-41 is not ambiguous. It does not place a duty on the defendant to ensure that the general contractor furnishes the payment of the bond.

Other jurisdictions agree. "A majority of states, with statutes similar to ours, hold that a subcontractor is precluded from recovery against a public body when he fails to ascertain if a bond is given." *Greenville Independent* v. *B & J Excavating,* 694 S.W.2d 410, 414 n.1 (Tex. Ct. App. 1985). These jurisdictions have concluded that while a general contractor is required to furnish a payment bond to protect the subcontractor's interests under the bond statute, the government body

sued the defendant for breach of contract but was denied relief because no bond had been furnished). The trial court and the plaintiff posit that it follows that there is a mandatory duty on the town to ensure the bond is provided. If we were to follow *Norwalk* v. *Daniele,* supra, however, the paving contract in this case would be invalid because a payment bond was never issued. Thus, the plaintiff would not prevail.

involved in the contract and its officials are not required to compel the general contractor to furnish the payment bond. It follows that a government body's failure to do so does not give rise to a cause of action against it by the subcontractor. See id., 414; see also *Penstan Supply Inc.* v. *Pennsylvania State University,* 44 Pa. Commw. 347, 403 A.2d 1054 (1979). We are inclined to follow the majority rule.

In its memorandum of decision, the trial court recognized that there are no Connecticut cases directly on point, and therefore relied on *Royal School Laboratories, Inc.* v. *Watertown,* 236 F. Sup. 950 (D. Conn.), rev'd on other grounds, 358 F.2d 813 (2d Cir. 1966), a case also involving the failure of a general contractor to furnish a payment bond to protect its subcontractor. The court addressed this issue and, in so doing, reviewed the history of § 49-41. In 1941, the legislature modified the wording of the statute to its present form: "Before any contract . . . is awarded to any person, such person shall furnish . . . a bond in the amount of the contract . . . ." General Statutes (1941 Sup.) § 694f. Before this modification, the statute provided: "Any officer or agent contracting on behalf of any [town] . . . shall require from each contractor, as a condition precedent to the execution of a contract . . . a bond for sufficient surety . . . for the payment of [laborers and material suppliers]." General Statutes (1930 Rev.) § 5109.

The District Court was not persuaded that the legislature's modification of that statute rendered the duty of the municipality and its public officials no longer mandatory. *Royal School Laboratories, Inc.* v. *Watertown,* supra, 236 F. Sup. 954. The court acknowledged that the majority view, which asserts that the failure of a municipality and its public officials to procure a payment bond from a contractor pursuant to the statute, does not cause them to be liable to subcontractors

for work performed or materials provided to the contractor. See id., 953. The District Court nevertheless opted to follow the minority rule which imposes a mandatory duty to obtain a payment bond, and judgment was rendered accordingly.

The Court of Appeals for the Second Circuit disagreed with the District Court's conclusion that the adoption of the minority rule by Connecticut was probable. *Royal School Laboratories, Inc., v. Watertown,* 358 F.2d 813, 816 (2d Cir. 1966). The Second Circuit ultimately determined that this was an issue for Connecticut courts to resolve and reversed the district court's decision on another ground, involving interpleader. Id., 816–17. We do not find the District Court's opinion in *Royal School Laboratories, Inc.,* persuasive.

In contrast to the District Court's opinion, the Michigan Appellate Court has held that a statute virtually identical to § 49-41[3] requires the general contractor to furnish the bond but does not place a duty on the governmental unit to ensure that the bond is furnished. *Barnes & Sweeney Enterprises, Inc.* v. *Hazel Park,* 169 Mich. App. 422, 425 N.W.2d 572 (1988). "While the importance of this semantic difference may not at first appear clear, the importance becomes more obvious when the predecessor statute is examined." Id., 425–26. "[I]n enacting the current statutory scheme, the Legislature chose not to include the language of the predecessor statute which imposed a duty upon the governmental body to require the bond. Rather . . . the language of the current statute places the duty to furnish the bond on the contractor. We believe that this change in language reflects an intent by the Legislature

---

[3] Mich. Comp. Laws § 5.2321 (1) provides that before a public works contract is awarded, the proposed contractor "shall furnish at his or her own cost to the governmental unit a performance bond and a payment bond . . . ."

to remove any duty on the governmental unit and place it upon the contractor." Id., 426.

The semantic differences in the two versions of Connecticut's bond statute are just as revealing. Like the Michigan statute, General Statutes § 49-41 does not impose a duty on the municipality or its officers to ensure that a payment bond has been furnished. Rather, the legislature intended the statute to require the general contractor to "furnish to the state or the subdivision a bond in the amount of the contract."

Federal courts considering cases under the Miller Act have drawn similar conclusions. There is no indication that the legislature intended to create a statute any different from that of the Congress of the United States in enacting the Miller Act, 40 U.S.C. §§ 270a–270e.''[4] *Baldwin-Lima-Hamilton Corporation* v. *Aetna Casualty & Surety Co.*, 163 Conn. 331, 337, 307 A.2d 169 (1972), cert. denied, 409 U.S. 1109, 93 S. Ct. 910, 34 L. Ed. 2d 689 (1973). Both acts serve the same purpose, set forth practically the same procedures, and share almost identical language. Id., 337–38. Thus, "[b]ecause § 49-41 is intended to operate in general conformity with the federal statutes popularly known as the Miller Act, 40 U.S.C. §§ 270a through 270e; *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.*, 207 Conn. 468, 476 n.7, 542 A.2d 692 (1988); *Internal Harvester Co.* v. *L. G. DeFelice & Son, Inc.*, 151 Conn. 325, 331–33, 197 A.2d 638 (1964); we look to the interpretation of the federal statute for guidance." *L. Suzio Concrete Co.* v. *New Haven Tobacco, Inc.*, 28 Conn. App. 622, 629, 611 A.2d 921 (1992) (relying on case law

[4] 40 U.S.C. § 270a (a) provides in pertinent part: "Before any contract, exceeding $25,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person . . . ."

related to the Miller Act to determine the definition of "public work" under § 49-41).

The United States Court of Appeals for the Seventh Circuit has applied the Miller Act to a similar set of circumstances as the present case. *Arvanis* v. *Noslo Engineering Consultants, Inc.,* 739 F.2d 1287 (7th Cir. 1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985). Two subcontractors brought suit under the Miller Act for reimbursement from the United States for the materials and labor provided to the general contractor on a paving contract with the United States. The court determined that the Miller Act requires only that contractors obtain performance and payment bonds. The statute places no affirmative obligation on the government to secure a payment bond and says absolutely nothing about what happens when the contractor fails to furnish the bond. The Miller Act does not waive sovereign immunity. Id., 1290.

Another federal court concluded that "[i]f the subcontractor is not paid, his only remedy is a suit under the Miller Act on the payment bond; he has no lien and no claim against the Government. . . . Furthermore, the Government's immunity from subcontractor claims is not waived by its failure to insist that its prime contractors furnish payment bonds." (Citation omitted.) *Shore Contractors, Inc.* v. *Heatherly,* 705 F. Sup. 293, 295 (E.D. Va. 1987).

As is true with its federal counterpart, General Statutes § 49-41 does not exact a duty on the municipality to ensure the general contractor furnishes a payment bond. The fundamental purpose of § 49-41 "is to protect and benefit those who furnish materials and labor to the contractor on public work, in that they may be sure of payment of their just claims, without defeat or undue delay . . . ." (Citation omitted; internal quotation marks omitted.) *American Masons' Supply Co.* v. *F. W. Brown Co.,* 174 Conn. 219, 227, 384 A.2d 378

(1978); *Pelton & King, Inc.* v. *Bethlehem,* 109 Conn. 547, 556, 147 A. 144 (1929). Thus, the statute protects subcontractors against default by the general contractors that hire them. A subcontractor's only recourse when a general contractor defaults on its debt is to sue on a payment bond pursuant to General Statutes § 49-42. Because the general contractor here did not furnish a payment bond, the plaintiff is left without recourse. While this situation is unfortunate, it is clear that § 49-41 does not make a governmental unit responsible for the general contractor's failure to furnish a payment bond, or the subcontractor's failure to protect its interests by determining that a payment bond had been furnished.

Thus, the defendant owed no duty to the plaintiff under the statute. " 'The existence of a duty of care is an essential element of negligence. . . . A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act.' *Coburn* v. *Lenox Homes, Inc.,* 186 Conn. 370, 375, 441 A.2d 620 (1982)." *Calderwood* v. *Bender,* 189 Conn. 580, 584, 457 A.2d 313 (1983). Since the defendant owed no legal duty to the plaintiff, the plaintiff's claim against the municipality is unenforceable as a matter of law and therefore the trial court improperly granted summary judgment in favor of the plaintiff.

The judgment is reversed and the case is remanded with direction to render judgment in favor of the defendant on its motion for summary judgment.

In this opinion the other judges concurred.