[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: REARGUMENT OF DENIAL OF MOTION FOR SUMMARY JUDGMENT
On May 10, 1993, the Court heard argument on plaintiff's motion to reargue its Motion for Summary Judgment.
For reasons stated herein, the Court reaffirms its decision CT Page 5114 denying plaintiff's request for summary judgment, although apparently the Court erred in using the term "collateral estoppel", rather than the term "estoppel" in the caption of its decision.
On May 10, 1993, the court heard argument on plaintiff's motion to reargue the motion for summary judgment which was before the court on December 21, 1992.
In his memorandum of law in support of his motion to reargue, the plaintiff essentially raises seven arguments which will be addressed in turn.
1. The Cosmar Affidavits
Plaintiff Dan Beard, Inc.'s first argument is that none of the affidavits submitted by Cosmar Construction Corporation contain any statements by the plaintiff which were intended or calculated to induce Cosmar to believe in the existence of any facts.
On Page Two of his affidavit, Fernando Constantini states that as President of Cosmar Construction Corporation he (Costantini) called Dan Beard, Inc. and he (Dan Beard) informed Constantini that Pave-Rite was a credit risk. Fernando Constantini also states that during the conversation, he offered to pay Dan Beard, Inc. directly for the material purchased to insure that Dan Beard, Inc. received payment but that despite the knowledge that Pave-Rite was a poor credit risk, Dan Beard, Inc. refused direct payment and represented that it would look directly to Pave-Rite for payment.
Fernando Constantini further states on Page Two of the affidavit, that "In reliance on that representation, [Costantini] agreed to make payment to Pave-Rite in the normal course of business." He further states that on November 13, 1991 he presented Pave-Rite with a check which represented the total amount due to Pave-Rite for the services performed and the materials supplied in connection with the project.
Taking the affidavit of June Mitchell next, she as President of Pave-Rite states that on or about November 13, 1991 Cosmar made payment to Pave-Rite under the terms of the agreement. Ms. Mitchell states that subsequent to that payment, she deposited these funds in a Pave-Rite checking account. She further states that one week earlier, the IRS served a notice of intent to levy Pave-Rite's bank account but that the money that was used to pay Dan Beard, Inc. was instead used to pay the IRS and other creditors. CT Page 5115
Clearly the affidavit of Fernando Costantini raises a genuine issue of fact as to whether Beard's statement, i.e., Beard refused payment by Cosmar and states that it would look directly to Pave-Rite for payment, induced Cosmar to rely to his detriment.
2. The Defense of Payment By the General Contractor To The Subcontractor
The plaintiff argues that the defense of payment by the general contractor to the subcontractor has been explicitly rejected by the Supreme Court in International Harvester Co. v. L. G. DeFelice Son, Inc., 151 Conn. 325, 197 A.2d 638 (1964).
In International Harvester, the Court was concerned with the issue of which items used in making repairs to trucks used to haul fill are properly recoverable under General Statutes 49-42. Id., 330. The Court went on to hold that if at the time of delivery, the facts unequivocally show that both the supplier and the purchasing contractor reasonably expected that any major item involved would be substantially consumed in the work under the contract, the cost thereof is properly recoverable even though the item was not actually consumed during the progress of the work. Id., 336.
Although on Page Five of its Memorandum of Decision, this Court quotes the language of the Supreme Court in International Harvester, that payment by the General Contractor to the Subcontractor for the performance of the subcontract is no defense to an action by the materialman against the general contractor on the payment bond, that language is not the holding of the Supreme Court. Furthermore, this Court is not basing its decision on the holding in International Harvester inasmuch as that holding is inapposite to the facts here.
3. The O G Industries Case
The plaintiff argues next that the Court never discussed O G Industries, Inc. v. New Milford, 29 Conn. App. 783 (December 29, 1992), which according to the plaintiff, stands for the proposition that General Statutes 49-41, et. seq., operates in conformity with the federal Miller Act.
In O G Industries, Inc., the general contractor (Austin Driveway Services) hired a materialman (O G) to supply materials for a paving operation that the general contractor agreed to CT Page 5116 perform for the Town of New Milford. After the Town paid the general contractor, the general contractor filed for bankruptcy without paying the materialman for the materials supplied. A payment bond was never furnished by the general contractor to protect the plaintiff. Id., 784. The issue in that case was whether49-41 imports a duty on the Town to obtain a payment bond from the general contractor who was hired to perform a public project. The Appellate Court found that 49-41 does not place a duty on the Town to ensure that the general contractor furnishes the payment of the bond. Id., 785-86. The Appellate Court followed the majority rule in other jurisdictions which holds that "while a general contractor is required to furnish a payment bond to protect the subcontractor's interests under the bond statute, the [municipality] involved . . . [is] not required to compel the general contractor to furnish the payment bond." Id.
In dicta the Appellate Court stated that:
 Federal courts considering cases under the Miller Act have drawn similar conclusions. There is no indication that the legislature intended to create a statute any different from that of the Congress of the United States in enacting the Miller Act, 40 U.S.C. § 270a — 270e. Baldwin-Lima-Hamilton Corporation v. Aetna Casualty Surety Co., 163 Conn. 331, 337, 307 A.2d 169 (1972), cert. denied, 409 U.S. 1109, 93 S.Ct. 910, 34 L.Ed.2d 689 (1973). Both acts serve the same purpose, set forth practically the same procedures, and share almost identical language. Id., 337-38. Thus, "[b]ecause 49-41
is intended to operate in general conformity with the federal statutes popularly known as the Miller Act, 40 U.S.C. § 270a through 270e; Nor'easter Group, Inc. v. Colossale Concrete Inc., 207 Conn. 468, 476 n. 7, 542 A.2d 692 (1988); International Harvester Co. v. L. G. DeFelice Son, Inc., 151 Conn. 325, 331-33, 197 A.2d 638
(1964); we look to the interpretation of the federal statute for guidance." L. Suzio Concrete Co. v. New Haven Tobacco, Inc., 28 Conn. App. 622, 629, 611 A.2d 921
(1992) (relying on case law related to the Miller Act to determine the definition of "public work" under 49-41).
(Emphasis added.) Id., 788-89.
Finally, the Appellate Court held that "[a]s is true with its federal counterpart, General Statutes 49-41 does not exact a duty CT Page 5117 on the municipality to ensure [that] the general contractor furnishes a payment bond." Id., 790.
The plaintiff in the instant case, argues that O G Industries stands for the proposition that 49-41, et. seq., operates in conformity with the Miller Act. (Emphasis added). Clearly, O G Industries stands for the proposition that 49-41
does not place a duty on a municipality to ensure that a general contractor furnishes a payment bond. Furthermore, the language that plaintiff cites as "standing for the proposition. . ." or as standing for the holding of O G Industries is merely dicta.
4. The Plaintiff's Federal Caselaw
The plaintiff's next argument is as follows: 1) the Court's memorandum did not even discuss the federal caselaw cited by the plaintiff; 2) because there is no Connecticut caselaw directly on point, this court should have considered this jurisdiction's controlling federal law; and 3) this case is most closely analogous with the Lincoln Electric case, i.e. U.S. for the Use and Benefit of Lincoln Electric Products Co., Inc. v. Greene Electrical Service of Long Island, Inc., 379 F.2d 207 (2d Cir. 1967).
In Lincoln Electric, supra, the general contractor (McTeague) contracted with the federal government to construct an automotive shop at an air force base. The general contractor furnished a payment bond and hired an electrical subcontractor (Greene) who was supplied with materials from a materialman (Lincoln). The subcontractor never paid the materialman for the materials used. A check presented to the materialman was dishonored. However, the materialman continued supplying the subcontractor despite the dishonored check and the absence of payments. Throughout the entire process the materialman never notified the general contractor that it was not receiving payments from the subcontractor.
In upholding the materialman's claim for payment, the Court held that the materialman practiced no deception on the general contractor and broke no promises to the general contractor. The materialman merely made no effort to give to the general contractor more of a notice than the minimum noticed required by statute.
However, considerable importance attends another federal case that was discussed in Lincoln Electric: U.S. ex rel. Westinghouse Electric v. James Stewart Company, 336 F.2d 777 (1964). The facts in that case are as follows: The general contractor (Stewart) CT Page 5118 contracted with the federal government for the construction of a training building for the U.S. Navy at San Diego, California. The general contractor also contracted with a subcontractor (Mojave) to perform the electrical work. The materialman (Westinghouse) supplied the subcontractor with the materials. The general contractor and its surety furnished a payment bond. The general contractor then learned from the materialman that the subcontractor owed the materialman monies for materials supplied. The general contractor then offered to either: (1) withhold a substantial payment it was about to make to the subcontractor; or (2) to issue a check made jointly payable to both the subcontractor and the materialman. The materialman informed the general contractor that neither arrangement was necessary and that the general contractor should pay the subcontractor directly because the materialman was satisfied that the subcontractor would pay the materialman. In reliance on this representation the general contractor paid the subcontractor. The general contractor further relied on a statement of the materialman that the materialman would advise the general contractor any time the subcontractor was delinquent in making payments and that the general contractor could rely on such notice to withhold future payments but that in the absence of such notice, the general contractor could proceed to make future payments to the subcontractor. The subcontractor became bankrupt, failed to pay the materialman and no notice of the subcontractor's delinquency was communicated to the general contractor pursuant to the agreement.
From a jury verdict in favor of the general contractor, its surety, and the prime contractor, the materialman sought appellate review of his claim that estoppel should not have been applied in this case.
The Appellate Court's holding in Westinghouse Electric is succinctly stated as follows: "We hold that in a proper case a materialman to a subcontractor in a Miller Act case may conduct himself as to be estopped to claim the protection of the Act." Id. at 780.
Although our court's "look to the interpretation of the [Miller Act] for guidance," the language of the Court in O G Industries mandates that we look to federal caselaw for an interpretation of 49-41. The instant case concerns the application of 49-42, which is separate from 49-41. Also, factually speaking Lincoln Electric dealt with the issue of lack of notice by the materialman to the general contractor that the subcontractor was in default. The instant case does not concern lack of notice but CT Page 5119 rather reliance on the part of the general contractor to pay the subcontractor, after having been told by the materialman that it would look directly to the subcontractor for payment, despite the materialman's knowledge of the subcontractor's poor financial condition.
Alternatively, since our courts are directed to look to federal court interpretations of the Miller Act as the plaintiff suggests, then we should look to Westinghouse Electric, a case that is more factually analogous to our case. In that case the general contractor alleged that he relied on two representations made by the materialman: (1) it relied on the materialman's representations that the general contractor should pay the subcontractor directly, after the general contractor offered to issue a check made jointly payable to the subcontractor and the materialman; and (2) it relied on the materialman's promise to notify the general contractor when the subcontractor was delinquent in making payments and that the absence of notice meant that the general contractor could continue to make payments.
In being guided by federal interpretations of the Miller Act, this Court can not ignore the Court's decision in Westinghouse Electric when it held: (1) that "[w]hether an estoppel is present is a question of fact"; and (2) "in a proper case, a materialman to a subcontractor in a Miller Act case can be estopped to claim the protection of the Act.
5. Estoppel In Cases That Do Not Involve Fraud or Deliberate Misrepresentation
The plaintiff argues next that the Court has cited cases which support the position that "estoppel may be `considered' in cases that do not involve fraud or deliberate misrepresentation.
While the plaintiff is correct in arguing that the cases cited by the Court which discuss the estoppel doctrine "do not involve fraud or deliberate misrepresentation [and] are inapposite," the plaintiff is incorrect in his statement that the Court cited those cases for the Position that "estoppel may be `considered' in cases that do not involve fraud or deliberate misrepresentation." What the court actually stated on page eight of its Memorandum of Decision was that "Connecticut Courts have considered applying the estoppel doctrine in cases that do not involve fraud or deliberate misrepresentation" — not that the Court "may" consider applying it or that those courts actually did apply it. The Court is also well CT Page 5120 aware that the cases cited in the Memorandum did not apply the doctrine of estoppel. Again, the Court presented those cases merely to point out that some Connecticut Courts have considered applying the estoppel doctrine in cases that did not involve fraud or deliberate misrepresentation to emphasize the point that since the present case concerns the application of the doctrine of estoppel and since fraud and deliberate misrepresentation have not been alleged, this Court likewise considered the application of that doctrine.
6. The Affidavits In Support of The Motion For Summary Judgment
The plaintiff next argues that the Court mistakenly referred to the affidavits of Fernando Constantini and Brian Wright as having been submitted by the plaintiff in support of its motion. The plaintiff further argues that in fact they were not filed in support of the motion; rather, they were merely appended to Exhibit F which itself was attached to the plaintiff's memorandum of law.
Practice Book 380 states that "[a] motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits . . . written admissions and the like." (Emphasis added). The party moving for summary judgment "must offer `such documents as may be appropriate, including but not limited to affidavits . . . written admissions and the like.'" Bassin v. Stamford, 26 Conn. App. 534, 537 (1992) quoting Practice Book 380.
Certainly, the Court undertook an analysis of the plaintiff's motion for summary judgment by doing exactly that which was mandated by the Connecticut Practice Book. To that end, and before any analysis was done to determine whether a genuine issue of fact existed, the Court checked to see whether the plaintiff submitted supporting affidavits along with its motion, also as mandated by Practice Book 380. The affidavits in Exhibit F apparently were filed in support of the motion.
7. Whether Beard Chose to Pursue Its Motion Against Cosmar Only
Finally, the plaintiff argues in its motion to reargue that page two of the Memorandum of Decision states that at short calendar on December 21, 1992, Beard "chose" to pursue its motion against Cosmar only. The plaintiff further argues that in fact, CT Page 5121 counsel for the plaintiff asked the Court to enter summary judgment for the plaintiff, against MCA, because of their failure to file an objection to the motion. The plaintiff finally argues that request was denied so that the plaintiff was only opposed by the defendant, Cosmar.
At short calendar on December 21, 1992, having denied the plaintiff's request to have summary judgment granted against MCA, for their failure to file an objection to the motion for summary judgment, the Court heard argument on the motion by the plaintiff and the defendant, Cosmar only.
Upon hearing argument, the Court "took the papers" with respect to the motion and proceeded to decide the motion with respect to the rights of the plaintiff and the defendant, Cosmar only. Since at short calendar the plaintiff was only opposed by defendant Cosmar, the Court confined its decision to a determination of the rights of the plaintiff and defendant Cosmar only. The Court may have misspoke when it stated in its Memorandum of Decision that Beard "chose" to pursue its motion against Cosmar only and for that it apologizes.
In conclusion, whether an estoppel is present is a question of fact. Westinghouse Electric, 336 F.2d 777, 779 (1964). Further, when deciding a motion for summary judgment the Court's function is not to decide issues of material fact, but rather to determine whether any such issues exist. Scinto v. Stamm, 42 Conn. Sup. 144,147 (1992).
Viewing the evidence in the light most favorable to nonmoving party Cosmar, as the Court must do whenever deciding a motion for summary judgment; Farmington v. Dowling, 26 Conn. App. 545, 548-49
(1992); the Court finds that a genuine issue of material fact exists as to whether materialman Dan Beard should be estopped from seeking payment from the general contractor Cosmar.
CLARANCE J. JONES, JUDGE